COMMONWEALTH *vs.* LEMUEL F. NOBLE.

Suffolk.    March 12, 1918. — May 21, 1918.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Narcotic Drugs.    Physicians and Surgeons.*

At the trial of an indictment under St. 1915, c. 187, § 2, charging a physician with prescribing narcotic drugs, including morphine, cocoaine and heroin, to different persons alleged to be habitual users of those drugs and known to the defendant to be such, the defendant contended that the persons to whom he prescribed the drugs were persons on whom he personally attended in good faith under § 3 of the act for the purpose of curing them of the habit of the use of such drugs and that such prescribing was not for the purpose of evading the provisions of the act within the meaning of the statute. Upon the issue of the defendant's good faith the evidence was conflicting. *Held,* that it was a question of fact for the jury whether the defendant believed that the drugs prescribed by him were needed for the treatment of the persons for whom he prescribed, or whether he was engaged in the business of issuing prescriptions to habitual drug users solely for his pecuniary gain and without reference to the question whether such drugs were needed by those who obtained them or not.

In the case above described the defendant asked the presiding judge to rule "that, being the attending physician in the cases referred to in the indictment, he was the only person who could then determine the obvious necessity for the therapeutic treatment after examination and history of the patient; that his judgment in the matter was conclusive and could not be reviewed or inquired into in a court of law in a trial of an indictment of this kind." The judge refused to make the ruling requested. *Held,* that the refusal of the judge was right; and it was *said,* that to hold that the defendant's honesty of purpose could not be inquired into would be to defeat the manifest purpose of the act.

INDICTMENT, found and returned in the Superior Court for the county of Suffolk in January, 1917, under St. 1915, c. 187, §§ 2, 11, charging the defendant with unlawfully prescribing, when not obviously needed for therapeutic purposes, certain narcotic drugs, including morphine, cocaine and heroin, to fifteen different persons named in the indictment and alleged to be habitual users of those drugs and known to the defendant to be such.

The defendant was tried before *Morton,* J. The evidence is described in the opinion. The defendant asked the judge to make the ruling which is quoted in the opinion. The judge refused to make this ruling, and submitted the case to the jury with other instructions, which concluded as follows: "The question of

obvious necessity to prescribe the drug and of the purpose for which it is prescribed is, as has been testified to, largely a matter of common sense. If you are satisfied beyond a reasonable doubt that the drug was not obviously needed and that the purpose of the defendant Noble in prescribing it was not in good faith to cure, but for the purpose of evading the law, then he is guilty."

The jury returned a verdict of guilty on all the counts of the indictment, and the judge at the request of the defendant reported the case for determination by this court. The report stated that it was not contended by the defendant that there was any error in the judge's charge except in so far as it was inconsistent with the ruling requested, and that the refusal of the judge to make that ruling raised the only question submitted for determination by this court.

St. 1915, c. 187, § 2, and the beginning of § 3 are as follows:

"Section 2. It shall be unlawful for any practitioner of veterinary medicine or surgery to prescribe any of the drugs mentioned in section one of this act for the use of a human being, and it shall be unlawful for any physician or dentist to prescribe, sell, give away or deliver any coca leaves or any cocaine or any alpha or beta eucaine or any compound, derivative or synthetic substitute for them, or opium, morphine, heroin, codeine or any preparation thereof, or any salt, compound or derivative of said substances to any person known to such physician or dentist to be an habitual user of those drugs, except when the drug is obviously needed for therapeutic purposes.

"Section 3. The provisions of this act shall not be construed to prevent any lawfully authorized practitioner of medicine, dentistry, or veterinary medicine from prescribing, administering, dispensing or distributing any of the drugs mentioned in this act that may be indicated for any patient under his care: provided, that such prescribing, administering, dispensing, or distributing is not for the purpose of evading the provisions of this act; . . ."

*D. J. Daley*, for the defendant.

*A. C. Webber*, Assistant District Attorney, for the Commonwealth, was not called upon.

CROSBY, J. This is an indictment wherein the defendant is charged in ninety-six counts with unlawfully prescribing narcotic drugs, including morphine, cocaine and heroin, when not obviously

needed for therapeutic purposes, to persons known to the defendant to be habitual users of such drugs, in violation of St. 1915, c. 187, § 2.

It is provided in § 3 of the act, in part, that it shall not be construed to prevent a lawfully authorized physician from prescribing any of the drugs mentioned in the act that may be indicated for any patient under his care, provided that such prescription is not for the purpose of evading the provisions of the act. The gist of the offence charged in the several counts is that the defendant, a physician, unlawfully prescribed drugs to fifteen different persons, alleged in the indictment to be habitual users of the above named drugs and known to the defendant to be such. The jury returned a verdict of guilty on all the counts, and, after a sentence was imposed, it was stayed until further order; and the case is reported to this court at the request of the defendant, who contends "that, being the attending physician in the cases referred to in the indictment, he was the only person who could then determine the obvious necessity for the therapeutic treatment after examination and history of the patient; that his judgment in the matter was conclusive and could not be reviewed or inquired into in a court of law in a trial of an indictment of this kind and he requested the court to so rule." The presiding judge refused so to rule and gave to the jury certain instructions which it is not contended by the defendant were erroneous except in so far as they were inconsistent with the ruling requested. The only question presented for our determination is whether the defendant was entitled to the ruling above referred to.

The Commonwealth contended at the trial, and offered evidence to show, that the defendant made it a regular practice to give prescriptions to habitual users of morphine, cocaine and other narcotic drugs, knowing them to be such, which enabled them to obtain possession and control of large quantities of such drugs, and that he knew that they were to be taken by habitual users thereof, — self-administered by means of a hypodermic syringe, — while the patients were at large and not under his control; that by means of such prescriptions the persons receiving them were not only supplied for their own uses, but were also able to furnish the drugs to other habitual users. There was evidence that the defendant received $2 for each prescription so furnished by him.

The Commonwealth also offered evidence that any method of treating a drug addict (as habitual users of narcotic drugs are called) not under the complete control and supervision of the physician, by prescribing narcotic drugs to be administered by the patient, had no justification in the practice of medicine; that under such a course of treatment the patients were free to go from one doctor's office to another and thus secure a supply of such drugs as they desired. There was also evidence that the defendant prescribed morphine and cocaine combined, that cocaine was prescribed for habitual users of that drug, and that such methods of treatment were improper and without justification; that the doses prescribed by the defendant were excessive in amount and were contrary to the legitimate practice of medicine; that the system followed by the defendant was to prescribe fifty or sixty grains of morphine sulphate to each patient as the initial prescription and every few days thereafter a similar prescription, calling for a single grain less than the preceding prescription, would be issued to the patient; and·that in many prescriptions a quantity of cocaine would also be prescribed and reduced in the same manner.

The report recites that the Commonwealth called, among other witnesses, the persons named in the indictment, who testified that they had received the prescriptions set forth in the various counts on the dates alleged; that they were habitual users of these drugs and had been for some time — in many instances for years — and that they so informed the defendant; that in several cases they gave assumed names and addresses to the defendant; that they called upon him for treatment for drug addiction and for nothing else; that the drugs so obtained were to be self-administered hypodermically, and while the patients were not under the control of the defendant; that in some instances, without the knowledge or consent of the defendant, they had supplied other addicts with drugs from the amounts prescribed by him.

The defendant testified that each one of the fifteen persons named in the indictment was treated by him as his patient in the practice of medicine; that when they gave their names and addresses he believed they were telling the truth; that when they came to him for treatment he talked with each one about his individual case in great detail; and advised them to go to some institution to be treated and cured of the habit as that was the best

way to be cured; that, if otherwise well, they could be cured of the disease; that they gave him reasons why they could not go to an institution at that time and told him that they would or thought they could go at a later time; that on subsequent occasions he urged them to be treated in some institution; that he continually cautioned them to adhere to his instructions and warned them that any departure therefrom would result in his finally dismissing them from further treatment; that in addition to the drugs, he gave them other medicines with instructions for taking. The defendant also testified (and offered expert testimony in support thereof) that the treatment he gave to these persons was in his opinion obviously necessary for therapeutic purposes, and was in accordance with his theory of treatment of drug addicts; that in his opinion a sudden withdrawal of the drug was harmful to the patient and that he believed this gradual reduction treatment was the best, and was necessary to alleviate the suffering of a patient, with the ultimate purpose of effecting a cure. On the other hand the Commonwealth introduced expert witnesses who testified that in their opinion such a prolonged reduction treatment was not necessary; that even a sudden withdrawal of the drug was not dangerous, and that they had never known of a case resulting fatally therefrom.

The indiscriminate use of narcotic drugs has long been recognized as a great and growing evil, and statutes have from time to time been passed by the federal government, and by many of the States, to control and restrain the use and sale of such drugs and to place the control of such sales in the medical profession. The statute in question was enacted to limit and control further the use of such drugs by prohibiting the giving of prescriptions therefor by unscrupulous practitioners to habitual users of drugs, "except when the drug is obviously needed for therapeutic purposes." The statute (§ 3) at the same time provides for the protection of reputable physicians who act honestly and in good faith.

While the question whether the drug is or is not obviously needed for therapeutic purposes in a given case is a question for the attending physician and he is not to be held liable for a violation of the statute if he acts in good faith, it does not follow that his judgment in the matter is conclusive and cannot be reviewed or inquired

into in a prosecution for an alleged violation of the statute. In the case at bar, upon conflicting evidence and the reasonable inferences to be drawn therefrom, it was a question of fact whether the defendant believed the drugs prescribed by him were obviously needed for the treatment of the persons for whom he so prescribed, or whether he was engaged in the business of issuing prescriptions to habitual drug users at $2 each, solely for his pecuniary gain and without reference to the question whether such drugs were obviously needed by those who obtained them or not.

If the jury found beyond a reasonable doubt upon the evidence, including the expert testimony, that the method of treatment was improper and unjustifiable, and was known to be such by the defendant, and that his conduct was such as to satisfy the jury that he was attempting by an ingenious scheme and plan of procedure to evade the statute under the guise of a pretended system of medical treatment for habitual drug users, they would be warranted in finding him guilty.

The question whether the defendant exercised his honest professional judgment and acted in good faith or whether he intentionally violated the statute, was a question of fact for the jury to be determined by them as men of practical sense and sound judgment. To hold that the honesty of purpose of the defendant, — whether in good faith he was of opinion that the drugs were obviously needed, — cannot be inquired into when he is charged with a violation of the statute, would be to defeat its manifest purpose and leave the community without adequate protection from the acts of unscrupulous and dishonest physicians. The presiding judge rightly refused the defendant's request, and, as the instructions given were correct, the entry must be

*Verdict to stand.*