EVA KING & another *vs.* ALEX SOLOMON.

Berkshire.    September 21, 1948. — October 29, 1948.

Present: QUA, C.J., LUMMUS, DOLAN, RONAN, & WILKINS, JJ.

*Negligence*, Physician and surgeon, Contributory, Violation of law. *Narcotic Drugs. Physician and Surgeon. Practice, Civil*, Parties. *Husband and Wife. Words*, "Delivery," "Personal injuries," "Accident."

A finding of negligence of the defendant was warranted in an action by a woman against a physician for malpractice where there was evidence that by hypodermic injections the defendant administered morphine to the plaintiff, who was suffering from nausea without pain or complaint of pain; that he did not question her as to her medical history nor make a physical examination; that subsequently he resumed such treatment with constantly increasing frequency over a considerable period until the plaintiff by reason thereof became a sufferer from morphine addiction described as "one quarter the way along to confirmed addiction"; and that it was not proper medical practice to administer morphine to a patient who complained of nausea but not of pain, or over a period of time where there was no pain involved, or to continue giving morphine in the absence of a diagnosis of a condition that could not be cured.

Evidence, at the trial of an action by a woman against a physician for malpractice causing her to suffer from morphine addiction through the frequent administering of morphine by hypodermic injections over a considerable period, did not require a finding that she knew what was being administered to her or that she knew she was taking an unsafe quantity or was becoming addicted, and did not require a ruling of contributory negligence on her part.

Section 200 of G. L. (Ter. Ed.) c. 94 does not relieve a physician from civil liability for malpractice in the administering of morphine.

The provisions of § 203 of G. L. (Ter. Ed.) c. 94, penalizing the making of a false statement "for the purpose of procuring a prescription for, or the delivery of, a narcotic drug" does not apply to the procuring of a hypodermic injection of morphine personally administered by a physician.

Under § 6A, inserted in G. L. (Ter. Ed.) c. 231 by St. 1939, c. 372, § 1, the husband of the plaintiff in an action against a physician for malpractice properly was admitted before trial as a party plaintiff seeking consequential damages, although, at the time when he presented his motion for such admission, maintenance of a separate action by him would have been barred by G. L. (Ter. Ed.) c. 260, § 4.

An action by a married woman against a physician for malpractice in the administering of morphine to her was for "personal injuries" within § 6A, inserted in G. L. (Ter. Ed.) c. 231 by St. 1939, c. 372, § 1.

TORT. Writ in the Superior Court dated February 21, 1942.

The action was tried in April, 1947, before *Burns*, J.

*R. T. Capeless & L. S. Cain*, for the plaintiffs.

*W. J. Donovan*, (*E. Ober* with him,) for the defendant.

*T. Chase & J. A. Perkins*, by leave of court, submitted a brief as amici curiae.

QUA, C.J. This is an action against a physician for malpractice. It was originally brought by Eva King by writ dated February 21, 1942. Her husband, Leo A. King, was admitted on motion as a party plaintiff on October 7, 1946. He claims consequential damages for medical expenses in a separate count under G. L. (Ter. Ed.) c. 231, § 6A, inserted by St. 1939, c. 372, § 1. After a verdict for each plaintiff the judge entered verdicts for the defendant on leave reserved, and the plaintiffs except. The defendant excepts to the order admitting the husband as a party plaintiff.

On the plaintiffs' exceptions the question is whether there was any evidence to warrant the verdicts for the plaintiffs. There was evidence that on December 25, 1939, the plaintiff Eva King was suffering from nausea but without pain; that the defendant, without any complaint of pain by her, without any physical examination, or questions as to medical history, gave her a hypodermic injection of morphine, which was repeated twice that day; that early

in 1940 the defendant gave her another injection in similar circumstances; that in 1941 the defendant gave her occasional injections until by July she was receiving about two injections a week; that by the end of August he was giving her an injection every day, in September twice a day, and in October three times or more a day until the plaintiff Leo A. King ordered the defendant from the house and threatened to "clean him up"; that thereafter the plaintiff Eva King became "jumpy and nervous"; and that two days later, "after telephoning about every doctor in Adams for morphine," she experienced a complete blackout and was taken to a hospital suffering from morphine addiction described as "one quarter the way along to confirmed addiction." There was evidence from which the jury could find that all these injections were of morphine. This plaintiff testified in effect that she had never stated she had pain until after the defendant had ceased giving her the injections. In 1944 she had her gall bladder removed. She testified that a stone was found, and that after the operation the nausea she had had since 1939 ceased. There was medical evidence that gall stones "don't come over night"; that the nausea was caused by the gall bladder trouble; that it was possible to have gall bladder trouble with nausea and without pain; and that it was not proper medical practice to administer morphine to a patient who complained of nausea but not of pain, or over a period of time where there was no pain involved, or to continue giving morphine in the absence of a diagnosis of a condition that could not be cured.

On the foregoing evidence the jury could find that the defendant in administering morphine to the plaintiff Eva King over a long period of time with constantly increasing frequency until she became to a considerable extent addicted to the drug failed to observe the standard of skill and care required of him as a physician. See *Small* v. *Howard*, 128 Mass. 131; *Semerjian* v. *Stetson*, 284 Mass. 510, 512–513; *Gabrunas* v. *Miniter*, 289 Mass. 20; *Vigneault* v. *Dr. Hewson Dental Co.* 300 Mass. 223. There was ample evidence, which need not be stated in detail, that her condi-

tion when she was taken to the hospital was proximately caused by morphine administered by the defendant notwithstanding evidence that another physician had given her codeine "from 1939 on and during the period of time Dr. Solomon was treating her," and that she had taken quantities of phenobarbital for a period not shown to have coincided with the period during which the defendant was administering frequent injections of morphine.

It could not be ruled as matter of law that the plaintiff Eva King was guilty of contributory negligence, or that she assumed the risk of addiction. It is true that she knew she was getting the injections, and that eventually she sought them, and she testified that by about the last of July she was "beginning to get a little sneaky — starting to lie" and did not always tell the defendant the truth about her condition. She also testified that she did not know what the defendant was giving her, although in July she had a "suspicion," and she knew it was something that was relieving her and making her feel "pretty high." From this, together with other evidence that need not be stated, the jury could have found that she knew she was getting morphine, but they were not obliged so to find. Much less were they obliged to find that she knew at what point addiction would begin, or that at any time before addiction became a fact she had ceased to rely upon the superior knowledge of the defendant as to the amount of the drug that could safely be taken over a given period of time. There was medical evidence that a person could become addicted "without knowing it."

The defendant is not aided by the provision in G. L. (Ter. Ed.) c. 94, § 200, that "A physician may personally administer any narcotic drug at such time and under such circumstances as he, in good faith and in the legitimate practice of medicine, believes to be necessary for the alleviation of pain and suffering or for the treatment or alleviation of disease." This section was intended merely to make it plain that physicians personally administering narcotics in good faith and in legitimate practice should be exempt from a series of penal provisions relative to the sale and distribution of

narcotic drugs. It was not intended to relieve them from civil liability under principles of law applicable generally not only to physicians in all other matters relating to the practice of their profession but also to all those who hold themselves out as possessing peculiar skill and competence in other professions and trades. This is made perfectly plain by referring to the wording of St. 1917, c. 275, § 3, the immediate predecessor of G. L. (Ter. Ed.) c. 94, § 200. See St. 1914, c. 694, § 3; St. 1915, c. 187, § 3; *Commonwealth* v. *Noble*, 230 Mass. 83, 87. And the plaintiff Eva King did not herself violate G. L. (Ter. Ed.) c. 94, § 203, inasmuch as she made no false representation "for the purpose of procuring a prescription for, or the delivery of, a narcotic drug." The word "delivery" in this penal statute, especially in view of the provisions of § 200 quoted above, cannot reasonably be stretched to include a hypodermic injection personally administered by a physician. We do not reach the question whether if she had violated the statute she would be prevented from recovering.

This decision rests upon evidence of improper and unprofessional conduct on the part of the defendant leading to addiction in the plaintiff Eva King. Nothing contained herein need cause anxiety to an honest physician who administers narcotics to a patient in accordance with the prevailing standards of medical practice.

On the defendant's exception the question is whether the plaintiff Leo A. King was properly admitted as a party plaintiff under G. L. (Ter. Ed.) c. 231, § 6A, inserted by St. 1939, c. 372, § 1, especially since the statute of limitations, G. L. (Ter. Ed.) c. 260, § 4, as amended, had already barred any separate action by him at the time when he was admitted as a party in his wife's action.

The 1939 act provides without qualification that "At any time before or during the trial of an action by a married woman or minor for damages for personal injuries," the husband or parent who has incurred medical expenses on account of such injuries may upon motion be admitted as a party plaintiff. This seems a plain provision that the husband or parent may be let in as long as the wife or minor

has pending an action that has not been completely tried. The statute is a remedial one. It was intended to simplify procedure and to obviate the necessity of a second action by the husband or parent. It should be construed liberally. We think that the husband or parent may be joined even after a separate action by him would be barred. The bar of the statute of limitations does not commonly destroy the cause of action. It merely renders it unenforceable. *Munroe* v. *Stanley*, 220 Mass. 438, 443. *Mulligan* v. *Hilton*, 305 Mass. 5, 10–11. The bringing in by amendment of a new party defendant after a new action against him would have been barred is familiar practice in this Commonwealth under G. L. (Ter. Ed.) c. 231, § 51. *Genga* v. *Director General of Railroads*, 243 Mass. 101, 104. *Shapiro* v. *McCarthy*, 279 Mass. 425, 429. *Chandler* v. *Dunlop*, 311 Mass. 1, 7. *Peterson* v. *Cadogan*, 313 Mass. 133.

But the defendant insists that this is not "an action . . . for damages for personal injuries" within the meaning of those words in the 1939 act. We think the words "personal injuries" should be broadly construed to accomplish the purpose of the act. The purpose was to avoid the necessity of a second action in cases where a husband or parent has been compelled by the tort of a defendant to incur medical expenses for a wife or child. Malpractice by a physician may compel a husband or parent to incur such expenses. Therefore "personal injuries" should, whenever reasonably possible, be construed to include the injurious effect of malpractice upon the health of the wife or child. At least in a case like the present, where the harm resulted from the administration by the defendant to the wife of that which in effect was a poison, it can fairly be held within the authority of a number of decisions that the action is "for personal injuries." *McChristal* v. *Clisbee*, 190 Mass. 120, 122. *H. P. Hood & Sons* v. *Maryland Casualty Co.* 206 Mass. 223, 225. *Hurle's Case*, 217 Mass. 223. *Johnson's Case*, 217 Mass. 388. *McPhee's Case*, 222 Mass. 1, 5. *Madden's Case*, 222 Mass. 487, 491–493. *Maggelet's Case*, 228 Mass. 57, 60–61. *Pimental's Case*, 235 Mass. 598, 602. *Panagotopulos's Case*, 276 Mass. 600, 604. *Smith's Case*, 307 Mass. 516. *De-*

*Stefano* v. *Alpha Lunch Co. of Boston,* 308 Mass. 38. *Mercier's Case,* 315 Mass. 238, 240. *Reidy* v. *Crompton & Knowles Loom Works,* 318 Mass. 135, 139. The use of the word "accident" in St. 1939, c. 372, § 2,[1] is not sufficient to persuade us to a different construction of that statute as applied to this case, even if the injury to the wife in this case was not an "accident." We do not decide whether it was such. The general prevalence of insurance in accident cases may have persuaded the Legislature to delay the taking effect of the act in such cases until the beginning of the following year.

The defendant's exception is overruled. The plaintiffs' exceptions are sustained. The verdicts entered on leave reserved are set aside, and the verdicts returned by the jury are to stand.

*So ordered.*

---

[1] This section reads as follows: "This act shall become operative on January first, nineteen hundred and forty, but shall not apply to any cause of action accruing as the result of any accident occurring prior thereto."