275 P.2d 175

**LOS ALAMOS MEDICAL CENTER, Inc., a Corporation, Cross-Appellee,**

v.

**Joseph S. COE, Jean S. Coe, Appellees and Cross-Appellants,**

**Charles A. Behney, Appellant.**

**No. 5712.**

Supreme Court of New Mexico.

Sept. 8, 1954.

Rehearing Denied Nov. 4, 1954.

F. A. Catron and Thomas B. Catron, III, Santa Fe, for appellant and cross-appellee.

A. L. Zinn, Dean S. Zinn and Frank B. Zinn, Santa Fe, for appellees and cross-appellants.

COMPTON, Justice.

This is an appeal from a judgment awarding damages for injuries allegedly resulting from malpractice. The action was orginally brought by Los Alamos Medical Center, Inc. against appellee, Joseph S. Coe, on account. On motion, appellee Jean S. Coe, his wife, was made a cross complainant, and appellant and Dr. Roscoe S. Wilcox were made cross-defendants. The account was not disputed and judgment was rendered accordingly. By counterclaim appellees alleged that the Medical Center, through its employees Dr. Wilcox and appellant Behney, negligently administered and prescribed morphine for self-administration without supervision in such amounts and frequency as to cause her addiction. It is alleged that

as a result of her addiction, her health was greatly impaired and that she suffered great pain in effecting a "withdrawal." They seek damages for such wrongful acts. The husband seeks consequential damages for loss of consortium of his wife and for medical expenses in a separate amount. The cross-defendants filed separate answers denying her addiction and their negligence as a cause thereof: Dr. Behney further alleges that all morphine prescribed or administered by him was made upon the insistent demands of appellees after having warned them of the dangers incident to the use of such drug; that if he were negligent, the Coes were guilty of contributory negligence as a proximate cause of the alleged injuries. Dr. Wilcox, and likewise the Medical Center, urged the same defenses as Dr. Behney. The Medical Center as a further defense pleaded immunity from liability by reason of being a non-profit corporation, engaged in the operation of a hospital and medical center for the purpose of providing medical, dental and hospital services and care without profit. At the close of the evidence, the cause was dismissed as to Dr. Wilcox. The issues were submitted to a jury which returned its verdict in favor of the Medical Center, and awarded both compensatory and punitive damages against Dr. Behney. Judgment was entered on the verdict and Dr. Behney brings the judgment here for review. · · ·

The main question is the sufficiency of the evidence to sustain the verdict. In this regard, all conflicts in the evidence must be resolved in favor of the successful party and all reasonable inferences indulged in to support the judgment, and all evidence and inferences to the contrary must be disregarded. Little v. Johnson, 56 N.M. 232, 242 P.2d 1000. Mrs. Coe was admitted to the hospital on several occasions. On March 28, 1950, she was admitted for dilation and curettage. She again entered the hospital April 16, 1950 for similar treatment. On June 6, 1950, she was admitted for a major operation, separation of adhesions and supra-vaginal hysterectomy. The latter operation was performed by appellant. Subsequently, on June 13, 1950, she entered the hospital for removal of intestinal obstructions and was finally discharged therefrom July 15, 1950. During all this time she received narcotics in some form or another. It seems Dr. Behney did not perform the latter operation, nevertheless, Mrs. Coe again became his patient on July 25 and remained such until November 3, 1950, at which time she went to Los Angeles, California and entered the Good Samaritan Hospital in Los Angeles, California, where she was diagnosed as a morphine addict after surgery. The amount, kind and quantity of narcotics prescribed and used by Mrs. Coe as shown by the hospital records is as follows:

| "DATE | DRUG | DOSE | QUANTITY | DOCTOR |
|---|---|---|---|---|
| 3–28–50 | Demerol | .05 | 12 | Shafer |
| 4–4–50 | " | .05 | 3 | Behney |
| 4–8–50 | | | | |
| 4–14–50 | Codein | .061 | 12 | Behney |
| 4–15–50 | Demerol | .05 | 3 | Behney |
| 4–18–50 | M. S. | .011 | 10 | Behney |
| 4–18–50 | Codein | .032 | 10 | Behney |
| 4–21–50 | M. S. | .011 | 10 | Behney |
| 4–25–50 | M. S. | .011 | 12 | Behney |
| 4–27–50 | " " | .011 | 12 | Behney |
| 4–27–50 | Demerol | .05 | 30 | Behney |
| 5–2–50 | M. S. | .011 | 12 | Behney |
| 5–24–50 | " " | .014 | 6 | Shafer |
| 5–26–50 | " " | .016 | 6 | Hawley |
| 6–6–50 | | | | |
| 6–13–50 | | | | |
| 7–22–50 | M. S. | .008 | 10 | Wilcox |
| 7–28–50 | " " | .011 | 20 | Behney |
| 8–2–50 | " " | gr. ⅙ | 20 | Behney |
| 8–5–50 | Demerol | .05 | 30 | Behney |
| 8–6–50 | M. S. | gr. ⅙ | 20 | Hawley |
| 8–11–50 | " " | gr. ⅙ | 20 | Hawley |
| 8–15–50 | " " | gr. ⅙ | 15 | Hawley |
| 8–17–50 | " " | .011 | 20 | Behney |
| 8–25–50 | " " | .011 | 20 | Behney |
| 8–28–50 | " " | .011 | 20 | Behney |
| 8–28–50 | Codein (APC) | .032 | 20 | Behney |
| 9–1–50 | M. S. | .011 | 20 | Behney |
| 9–5–50 | " " | .011 | 20 | Behney |
| 9–5–50 | Codein (APC) | .032 | 30 | Behney |
| 9–8–50 | M. S. | .011 | 20 | Behney |
| 9–12–50 | " " | .011 | 20 | Behney |
| 9–20–50 | " " | .011 | 20 | Behney |
| 9–23–50 | " " | .011 | 20 | Behney |
| 9–27–50 | " " | .011 | 20 | Behney |
| 9–29–50 | M. S. | .011 | 20 | Behney |
| 10–2–50 | " " | .011 | 20 | Behney |
| 10–5–50 | " " | .011 | 20 | Behney |
| 10–7–50 | M. S. Sol. | 20cc– .210 | | Behney |
| 10–12–50 | " " | 20cc–G.210 | | Behney |

| "DATE | DRUG | DOSE | | QUANTITY | DOCTOR |
|-------|------|------|------|----------|--------|
| 10–16–50 | M. S. Sol. | 20cc– | .200 | | Behney |
| 10–18–50 | " " | 20cc– | .194 | | Behney |
| 10–23–50 | " " | 20cc– | .194 | | Behney |
| 10–26–50 | " " | 20cc– | .194 | | Behney |
| 10–27–50 | " " | 20cc– | .194 | | Behney |
| 10–31–50 | " " | 20cc– | .194 | | Behney" |

As previously stated, Mrs. Coe became Dr. Behney's patient on July 25, 1950, the date she was discharged from the Medical Center. After returning to her home she began to complain of severe pains and appellees consulted Dr. Behney about self-administration of narcotics at home and this was agreeable to Dr. Behney. The husband, son, daughter, son-in-law, and Mrs. Coe herself, all administered morphine to her by hypodermic injections. Actually, from July 25, 1950 to November 3, 1950, Dr. Behney made no calls to their home nor did he treat her organic trouble except to make two or three pelvic examinations. When she would complain of pain, they would phone appellant and he would issue a prescription for morphine to be administered for relief of pain as needed, and they were to be the judge in this respect. This continued until the Coes themselves decided that she was not recovering properly from her organic trouble and they decided to call a Dr. Norris of Los Angeles and to ask his advice concerning her progress. Dr. Norris advised her to contact Dr. Cornish of Albuquerque, which she did. Subsequently, about November 1, 1950, the Coes decided to go to Los Angeles for further consultation with Dr. Norris. They discussed the matter with Dr. Behney, who advised them it was unnecessary as her recovery was satisfactory, nevertheless, he agreed, and on November 2, 1950, Dr. Behney gave her an additional 30 morphine tablets and 36 sleeping pills to tide her over until she could contact Dr. Norris. This prescription is not shown on the above chart. She left Albuquerque November 3, 1950 by plane and was admitted to the Good Samaritan Hospital the following day. She then complained of great pain, requiring an unusual amount of morphine. Dr. Norris performed an exploratory operation on November 13 and found her to be suffering from adhesions and intestinal obstructions and apparently experiencing pain. Following the operation, her tolerance to pain was so low as to arouse Dr. Norris' suspicion as to her use of narcotics. It was found she had been using morphine about every three hours, day and night, but having utmost confidence in Dr. Norris, Mrs. Coe confided in him the amount of morphine she had taken and at his demand agreed to undertake the withdrawal, which followed. The operation per-

formed by him was successful and she was discharged from the hospital December 7, 1950. The agonies of her withdrawal were related to the jury by Dr. Norris and Mrs. Coe. This evidence warrants an inference of addiction due to the lack of care on the part of appellant. Instead of attempting to discover the cause of her suffering and relieving it, Dr. Behney continually gave her morphine to relieve her pain and desires, with the result, as the jury found, she became an addict.

 The allowance of punitive damages is assigned as error. The rule in this regard is found at 41 Am.Jur. (Physicians & Surgeons) § 134, as follows:

"* * * The law may, however, permit an award of punitive damages in such cases where the negligence is wanton or gross, as where the physician is shown to have been actuated by bad motives or intent to injure the patient, or where the treatment was given or the operation performed with utter indifference as to the effect upon the patient. * * *"

Also see 70 C.J.S., Physicians and Surgeons, § 67, which reads:

"* * * the weight of authority is to the effect that such damages may also be recovered where a physician has been guilty of gross negligence amounting to reckless indifference in treating a patient. * * *"

The Coes themselves were apprehensive and discussed the possibility of addiction with appellant and he assured them that they had no cause for alarm as her pain was so severe that it would counteract the effect of the morphine. He was thus put on notice but remained indifferent as to the harmful results which followed. We think this evidence was sufficient to take that issue to the jury.

 Mrs. Coe's deposition was taken December 18, 1951, in which she stated that she felt she became an addict while in the hospital, the latter part of June or the first part of July, 1950. Appellant excepted to all testimony concerning the use of morphine by her subsequent to that date, claiming she is bound by her answer. There is no merit to this contention. Both Dr. Norris and Dr. Cornish testified that a person could not testify with any degree of certainty when he becomes an addict. The testimony of the medical experts on the subject should be controlling.

 Appellant seriously questions the qualifications of Dr. Norris and Dr. Cornish to express an opinion as to the addiction of Mrs. Coe. Both are general practitioners of medicine and surgery, Dr. Norris in California and Dr. Cornish in Albuquerque. A graduate of a well recognized Medical College, Dr. Cornish has been engaged in general practice in Albuquerque since 1920. During the course of his practice, he has

administered morphine and also encountered drug addiction in the treatment of his patients. He testified it was a simple matter to detect whether a patient is addicted to the use of narcotics. Actually, he testified that while he was not an expert in that field, he had taken courses in the treatment, care and detention of addicts. The mere fact that he may have had no particular experience in the immediate vicinity of Los Alamos in the use of morphine, does not render his testimony inadmissible. The standard of care and skill required of physicians in administering morphine unquestionably is the same. Dr. Norris has practiced his profession for some 32 years. Licensed in New York, California and Arizona, he is a senior member of surgical staffs of several hospitals, and while not claiming to be an expert on the subject of narcotics, has observed many addicts and actually treated several cases. He likewise stated it is a simple matter to determine if a patient is addicted. We think they were competent to testify, though they may not be highly qualified to testify on the subject. See 70 C.J.S., Physicians and Surgeons, § 62, 20 Am.Jur. (Evidence) § 785.

■ Specialists in drug addiction testified on behalf of appellant to the effect that the quantity of drugs shown to have been administered to Mrs. Coe could not result in addiction and that the withdrawal of a true addict could not be accomplished within the short time required for withdrawal by Mrs. Coe. We have already held that the expert testimony of Dr. Norris and Dr. Cornish, expressing a different view, was admissible. Under these circumstances, it was within the province of the jury to evaluate and choose between the views of the experts on this question, and we are not in a position to disturb the jury's finding of addiction.

■ Appellant urges that appellees are guilty of contributory negligence and assumed the risk incident to the use of the morphine by them. We find the rule stated thusly at 41 Am.Jur. (Physicians & Surgeons) § 80:

"Negligence of the patient, to constitute a bar to the suit, must have been an active and efficient contributing cause of the injury; it must have been simultaneous and co-operating with the fault of the defendant, must have entered into the creation of the cause of action, and have been an element in the transaction which constituted it. Where the fault of the patient was subsequent to the fault of the physician and merely aggravated the injury inflicted by the physician, it only affects the amount of the damages recoverable by the patient. Since the patient may rely on the directions of his physician, it follows that he incurs no liability by doing so. * * *"

The evidence is clear that Mrs. Coe in order to get a prescription, frequently complained of pain when no pain was present. She testified she used it at the last for the jitters and for nervousness, at other times just to feel good. But being fearful of its harmful effects, appellees contacted appellant as to the consequences of using too much morphine and were told by him not to worry in this regard as Mrs. Coe was improving physically and that she could be given morphine whenever she felt the need of it. Appellees testified they relied upon the instructions of appellant in this regard. Obviously they had a right to rely upon his superior knowledge.

In King v. Solomon, 323 Mass. 326, 81 N.E.2d 838, 840, 8 A.L.R.2d 1, that court disposed of a similar contention in the following language:

"It could not be ruled as matter of law that the plaintiff Eva King was guilty of contributory negligence, or that she assumed the risk of addiction. It is true that she knew she was getting the injections, and that eventually she sought them, and she testified that by about the last of July she was 'beginning to get a little sneaky—starting to lie' and did not always tell the defendant the truth about her condition. She also testified that she did not know what the defendant was giving her, although in July she had a 'suspicion,' and she knew it was something that was relieving her and making her feel 'pretty high.' From this, together with other evidence that need not be stated, the jury could have found that she knew she was getting morphine, but they were not obliged so to find. Much less were they obliged to find that she knew at what point addiction would begin, or that at any time before addiction became a fact she had ceased to rely upon the superior knowledge of the defendant as to the amount of the drug that could safely be taken over a given period of time. There was medical evidence that a person could become addicted 'without knowing it.' "

In Kelly v. Carroll, 36 Wash.2d 482, 219 P.2d 79, 90, 19 A.L.R.2d 1174, in the course of the opinion the court said:

"On the question of contributory negligence in such cases as the one at bar, it is the law that 'It is not a part of the duties of a patient to distrust his physician, or to set his judgment against that of the expert whom he has employed to treat him or to appeal to other physicians to ascertain if the physician is performing his duty properly. The very relation assumes trust and confidence on the part of the patient in the capacity and skill of the physician; and it would indeed require an unusual state of facts to render a per-

son who is possessed of no medical skill guilty of contributory negligence because he accepts the word of his physician and trusts in the efficacy of the treatment prescribed by him. A patient has the right to rely on the professional skill of his physician, without calling others in to determine whether he really possesses such skill or not. The patient is not bound to call in other physicians, unless he becomes fully aware that the physician has not been, and is not, giving proper treatment.' "

Appellant assigns error in the instructions given the jury and the refusal of certain tendered instructions. We find no merit to the claim of error. The instructions given, when taken as a whole, fairly present the law of the case to the jury.

There is another phase of the case. Appellees cross-appealed on the ground the court committed error in its instruction with regard to the immunity of the Medical Center. The jury was instructed that if it should find that the Medical Center was a non-profit corporation and there had been no distribution of profits derived from its operation or from the medical services furnished by it, the Medical Center was not liable for the acts of its agent, Dr. Behney. The objection to the instruction is in the following language:

"Objection is made to Instruction No. 28 on the ground that the instruction is contrary to the provisions of law allowing non-profit corporations to sue and to be sued (Section 54—1313 N.M. Comp.1941) *and is further contrary to law in that it applies the law relating to liability of charitable hospitals and institutions* to a non-profit corporation which performs, according to the evidence, no charitable functions and activities, and by its own admission makes a charge for all its services and particularly made a charge for the services rendered to Mrs. Coe, who was in no sense a beneficiary of the Los Alamos Medical Center." (Emphasis ours.)

Thus, it will be seen that the question now raised was not presented to the trial court for determination, that is, whether charitable corporations are liable for the torts of their agents. The objection concedes that if the Medical Center was a charitable institution and operating as such, the instruction is proper. There is no dispute in the testimony that the institution does not distribute profits derived from its operation to any person. Its articles of incorporation provide "This corporation is organized exclusively for charitable, scientific and educational purposes as a non-for-profit corporation and its activities shall be conducted for the aforesaid purposes in such a manner that no part of its net earnings will inure to the benefit of any member, trustee,

·officer or individual. * * *" Consequently, the question of immunity of cross-appellee, Los Alamos Medical Center as a charitable institution is not open to review on appeal and a decision on this point will be reserved until the question is properly before us.

The judgment will be affirmed with direction to the lower court to enter judgment against appellant and the surety upon his supersedeas bond, and it is so ordered.

McGHEE, C. J., and SADLER, LUJAN and SEYMOUR, JJ., concur.