703 P.2d 904

**Gilbert GONZALES, Plaintiff-Appellee,**

v.

**Orhan M. SANSOY, M.D., Defendant-Appellant.**

**No. 7425.**

Court of Appeals of New Mexico.

Dec. 13, 1984.

Patrick A. Casey, P.A., Santa Fe, Eugenio S. Mathis, Las Vegas, Sarah Michael Singleton, Nancy Augustus, Santa Fe, for plaintiff-appellee.

Bruce Hall, Tracy E. McGee, Rodey, Dickason, Sloan, Akin & Robb, P.A., John S. Thal, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, for defendant-appellant.

## OPINION

NEAL, Judge.

This is a medical malpractice case which we review on remand from the supreme court. At the trial level, plaintiff was awarded damages of $60,302.88 and punitive damages of $75,000.00. On appeal this court reversed the judgment, finding that proximate cause was lacking. Due to that result we did not reach the other issues urged as grounds for reversal. On writ of certiorari, the supreme court reversed. *Gonzales v. Sansoy*, 102 N.M. 136, 692 P.2d 522 (1984). We therefore consider the remaining issues in light of the supreme court's resolution of the proximate cause issue.

The facts of the case were set out in detail in our earlier opinion as well as in the supreme court's opinion. We now discuss the issues of whether the punitive damages award is supported by substantial evidence, and whether a limiting instruction should have been given regarding the admission into evidence of the defendant's financial statement.

## I. Punitive Damages.

■ Defendant contends he was entitled to a directed verdict on punitive damages. Because we reversed on the compensatory damages claim, we did not reach the issue of punitive damages in the initial appeal. An award of punitive damages must be supported by an award of compensatory damages. *Christman v. Voyer*, 92 N.M. 772, 595 P.2d 410 (Ct.App.1979). The damages claims submitted to the jury were based on defendant's conduct on September 17 and 18, 1978; no damage claim was submitted on the basis of defendant's conduct on September 23, 1978, when plaintiff was admitted to the hospital. "The conduct giving rise to the punitive damages claim must be the same conduct for which actual or compensatory damages were allowed." *Traylor v. Wachter*, 227 Kan. 221, 607 P.2d 1094 (1980); *cf.*, *Christman v. Voyer*. Inasmuch as no compensatory damages were assessed for defendant's conduct on September 23 (because not submitted to the jury), the punitive damages award was necessarily based on defendant's conduct on September 17 and 18.

■ Punitive or exemplary damages may be assessed to punish a defendant, but not to compensate for a loss by plaintiff. *Sanchez v. Dale Bellamah Homes of New Mexico, Inc.*, 76 N.M. 526, 417 P.2d 25 (1966). They are also awarded as a deterrent and warning for others, *Christman v. Voyer*. Recovery of punitive damages is permissible if the jury finds the wrongdoer's conduct to be willful, wanton, malicious, reckless, oppressive, grossly negligent, or fraudulent and in bad faith. *Loucks v. Albuquerque National Bank*, 76 N.M. 735, 418 P.2d 191 (1966); NMSA 1978, UJI Civ. 18.27 (Repl.Pamp.1980). Any one of the reasons for assessing punitive damages is sufficient to sustain an award. *Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368 (1967).

■ While *Claymore v. City of Albuquerque*, 96 N.M. 682, 634 P.2d 1234 (Ct. App.), *aff'd*, *Scott v. Rizzo*, 96 N.M. 682, 634 P.2d 1234 (1981), abolished the distinction between gross negligence and ordinary negligence liability, gross negligence remains a sound basis for awarding punitive damages. *Ruiz v. Southern Pacific Transportation Co.*, 97 N.M. 194, 638 P.2d 406 (Ct.App.1981).

> [G]ross·negligence remains as a ground for a punitive damage award in any case where the trier of fact finds that the plaintiff bears no fault for the injury. The defendant's gross negligence is also a basis for an award of punitive damages in cases where the judge or jury finds the plaintiff to be negligent in some degree, but also finds the defendant's negligence to be "gross" as compared to the plaintiff's negligence.

**130**

Otten and McBride, Survey of New Mexico Law, Torts, 13 N.M.L.Rev. 473, 476 (1983).

■ The rules and principles of punitive damages generally are applicable to medical malpractice actions. In *Los Alamos Medical Center v. Coe*, 58 N.M. 686, 275 P.2d 175 (1954), the supreme court stated that punitive damages may be awarded where the negligence is wanton or gross, or where the physician is shown to have been actuated by bad motives or intent to injure, where the treatment was given with utter indifference to the effect on the patient, or where the physician has been guilty of gross negligence amounting to reckless indifference. The court upheld a punitive damage award where the doctor was put on notice that the drugs he prescribed may have caused addiction, but "remained indifferent to the harmful results which followed." 58 N.M. at 691, 275 P.2d at 178. A survey of the cases from other jurisdictions indicates that mere negligence or inadvertence is not sufficient to support an award of punitive damages, the negligence must be aggravated by a mental state such as reckless indifference. *See* Annot., 27 A.L.R.3d 1274 (1969).

Here the court instructed the jury on gross negligence. The allowance of exemplary damages rests with the discretion of the jury, UJI Civ. 18.27 (Repl.Pamp.1980), but if there is insufficient evidence to justify the allowance of punitive damages, the question should not be submitted to the jury. *Id.* Therefore the issue is whether there was sufficient evidence of gross negligence to instruct the jury that they may award punitive damages.

■ The court's instruction equated gross negligence with utter indifference to, or conscious disregard for the patient's safety or the safety of others. As punitive damages are in the nature of punishment, it is necessary that there be some evidence of a culpable mental state, whether recklessness or "utter indifference." The court's instruction recognized that requirement. However, viewing the evidence in the light most favorable to the verdict, *Mascarenas v. Gonzales*, 83 N.M. 749, 497 P.2d 751 (Ct.App.1972), but also considering undisputed testimony even if it favors the defendant, *Skyhook Corp. v. Jasper*, 90 N.M. 143, 560 P.2d 934 (1977), there was insufficient evidence to support an award of punitive damages.

On September 17 and 18, Dr. Sansoy incorrectly diagnosed plaintiff as suffering from gastroenteritis and a recurrent peptic ulcer. Under the law of the case, that constituted negligence. However, there is no suggestion the misdiagnosis was a result of reckless conduct or utter indifference to the patient of the sort required by the *Los Alamos Medical Center* case. *See also Skodje v. Hardy*, 47 Wash.2d 557, 288 P.2d 471 (1955); *Medvecz v. Choi*, 569 F.2d 1221 (3d Cir.1977). Plaintiff recognizes that at this point we are concerned with evidence "determining the defendant's state of mind." Plaintiff asserts: "A reasonable inference from the testimony of Mr. Gonzales and of Dr. Sklar is that Dr. Sansoy manifested a callous indifference to his patient's welfare by repeatedly ignoring the patient's complaints and pleas for help." This is an incorrect characterization of the evidence which was detailed in the reversed court of appeals opinion. Defendant's summary of that evidence, although incomplete, is sufficient to answer plaintiff's argument. The summary states:

> It is undisputed that Dr. Sansoy attended the patient when called on the 17th; that he examined him, had medications administered, ordered and obtained blood tests and screened Mr. Gonzales for pancreatitis. It is undisputed that Dr. Sansoy had a history of the patient's complaints, taken by the nurse. It is further undisputed that the doctor made a diagnosis based upon this history and examination, a diagnosis which was consistent with his knowledge of Mr. Gonzales' previous medical problems. Plaintiff cannot and does not dispute that Dr. Sansoy did the things that doctors ordinarily do: examine, test, treat and diagnose; plaintiff's complaint is that he did these things incompletely.

The evidence is that defendant believed he had diagnosed plaintiff's problem. Even plaintiff's expert, Dr. Sklar, acknowledged atypical symptoms and that diagnosis was difficult.

Even if defendant's conduct of September 23 is considered, the evidence is still insufficient. On September 23, the defendant admitted plaintiff to the hospital through telephone calls. According to undisputed testimony, it is standard practice in the community for doctors to admit patients to the hospital by phone, relying on the nurses to take vital signs, assess the patient's condition, and notify the doctor if the patient is in acute distress. There were phone conversations between the defendant and nurses; the doctor gave admitting orders and prescribed pain medication. He was never notified by the nurses that the patient was in extreme distress. The plaintiff's symptoms as described to Dr. Sansoy were consistent with his earlier diagnosis. He did not know of the dangerous condition and disregard it. Nothing suggested his previous diagnosis was incorrect. Indeed, the operating physician did not discover the ruptured appendix until one hour into the operation. Defendant did not consciously disregard risk, or act with utter indifference to the plaintiff's welfare. While his incorrect diagnosis was found to be negligent, there is no evidence that he possessed the requisite mental state necessary for the imposition of punitive damages. He was therefore entitled to a directed verdict on the issue.

## II. Limiting Instruction.

The defendant also contends that the court's failure to give a limiting instruction constitutes reversible error. The plaintiff introduced the defendant's financial statement into evidence, over objection. Plaintiff's counsel argued the evidence was relevant to Dr. Sansoy's ability to sustain a judgment on punitive damages. The court admitted the document and stated, out of the hearing of the jury, that the doctor's net worth might be considered in an award of punitive damages based on a jury determination of gross negligence. Defendant contends that the evidence could have prejudiced the jury on a determination of liability or compensatory damages and thus resulted in an unfair trial.

■ There is no question that the financial statement was relevant and admissible only to the issue of the amount of punitive damages. The admission of evidence for a limited purpose is governed by NMSA 1978, Evid.Rule 105 (Repl.Pamp.1983), which states, "[w]hen evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." The language of the rule is the mandatory "shall"; where the court decides to admit evidence for a limited purpose it may not refuse a requested instruction. 1 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 105[01] (1982); *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 266 (5th Cir. 1980).

■ We must determine the consequences of the trial court's error in refusing to instruct as provided in Evid.Rule 105. Plaintiff asserts the consequence of the error may not be considered on procedural grounds. Defendant requested a limiting instruction at the end of the trial. Plaintiff asserts that the request should have been made at the time the evidence of net worth was admitted. The limiting instruction may be given either at the time of admission of the evidence or included in the instructions given in submitting the case to the jury, or at both times. *State v. Minor*, 78 N.M. 680, 437 P.2d 141 (1968); *Lubbock Feedlots, Inc. v. Iowa Beef Processors, Inc.; Weinstein's Evidence, supra,* ¶ 105[05].

■ Plaintiff also contends that the defendant's objection to the trial court's failure to give the limiting instruction was not timely because the objection was not made until the jury had started its deliberations. Plaintiff fails to consider NMSA 1978, Civ. P.Rule 51(I) (Cum.Supp.1984) which pro-

vides that error is preserved in connection with a failure to instruct if a correct instruction is tendered before retirement of the jury. Plaintiff does not claim that the requested limiting instruction was incorrect or was not timely tendered. The consequence of the trial court's failure to give the limiting instruction is properly before us for decision.

Plaintiff contends that compliance with Evid.Rule 105 is discretionary with the trial court because the limiting instruction is no more than a cautionary instruction, the refusal of which is not error. We have held, pursuant to the plain language of Evid. Rule 105, that a limiting instruction is mandatory when properly requested.

Plaintiff asserts that no consequences attach to the violation of Evid.Rule 105 because instructions must be considered as a whole and the jury was so instructed. This argument is a *non sequitur* because there was *no* instruction informing the jury how it should consider the evidence of defendant's net worth. Plaintiff also contends that there are no consequences to the error under *McCauley v. Ray*, 80 N.M. 171, 453 P.2d 192 (1968). According to plaintiff, *"McCauley*, in fact, recognizes that admission of improper evidence of net worth does not affect a finding of liability or an award of compensatory damages." This is a specious characterization. The evidence, discussed at 80 N.M. 182, 453 P.2d 192, was held not to "establish worth or ability to pay." *McCauley* holds: "We cannot say that this evidence in any manner affected the award of compensatory damages or the finding of corporate liability." Here, there is evidence of net worth. Further, *McCauley* did not consider the violation of a rule providing for a mandatory instruction. *McCauley* does not answer the question of consequences.

Defendant asserts that where there is a mandatory instruction, the applicable rule is that reversal is required if there is the slightest evidence of prejudice. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970); *see also Adams v. United Steelworkers of America, AFL–CIO*, 97 N.M.

369, 640 P.2d 475 (1982); *Collins v. Michelbach*, 92 N.M. 366, 588 P.2d 1041 (1979). Plaintiff would avoid the holding in *Seidenberg*, arguing that *Seidenberg* applies only to Uniform Jury Instructions, and the mandatory instruction in this case appears in the Evidence Rules. We need not discuss plaintiff's quibble; instead, we consider the purpose of Evid.Rule 105.

*Weinstein's Evidence, supra,* ¶ 105[02] states:

The rule represents a compromise between two competing interests—the desire to admit all relevant evidence and the recognition that a jury composed of twelve untrained triers of fact may not, in the absence of some control by the judge over the evidence presented, accurately assess its probative value or confine its use of the evidence to its proper legal scope.

The compromise, which is Evid. Rule 105, recognizes the danger of prejudice to defendant from the net worth testimony. The trial court also recognized the danger of prejudice. The rule is designed to ameliorate that danger by requiring an instruction limiting the net worth evidence to its proper scope. The trial court refused to give the limiting instruction and, thus, failed to ameliorate the danger of prejudice. This denied defendant the benefit of the compromise embodied in the rule. The failure to give the limiting instruction was reversible error.

Plaintiff asserts that even if a violation of Evid.Rule 105 may be reversible error, it is not in this case. Plaintiff invokes the harmless error rule. The evidence in this case does not point so strongly and overwhelmingly in favor of plaintiff that reasonable jurors could not arrive at a contrary result; rather, reasonable and fairminded jurors could reach different conclusions. We cannot say that the net worth evidence, not limited to its proper scope, had no prejudicial impact on the outcome of the case. Thus, the error was not harmless. *See Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*

What, then, are the consequences? Because the evidence was insufficient for submission of the issue of punitive damages to the jury, the error does not affect our disposition of that issue. Punitive damages are out of the case. The error, however, requires a reversal and remand for a new trial on the issues of liability and compensatory damages.

The judgment of the trial court is reversed and the cause is remanded with instructions for a new trial limited to liability and compensatory damages. Defendant shall recover his appellate costs.

**IT IS SO ORDERED.**

WOOD, J., concurs.

ALARID, J., concurring in part and dissenting in part.

ALARID, Judge (concurring in part and dissenting in part).

Although I agree with the majority result on the issue of punitive damages, I would leave the verdict as to compensatory damages standing.

The failure to give a mandatory instruction does not create a presumption of prejudice necessitating reversal. *Jewell v. Seidenberg*, 82 N.M. 120, 477 P.2d 296 (1970). The record must be reviewed to determine evidence of prejudice before reversal is appropriate. *Id.* Because I find substantive, independent evidence supporting the award of compensatory damages, I am not convinced of the existence of prejudice affecting this award.

The judgment for compensatory damages should be affirmed.