490 So.2d 76 (1986)
William J. NORMAN and Carol Norman, His Wife, Appellants,
v.
MANDARIN EMERGENCY CARE CENTER, INC., R.D. House, and St. Paul Fire and Marine Insurance Company, Appellees.
No. BE-12.
District Court of Appeal of Florida, First District.
January 15, 1986.
*77 Thomas R. Brown and Evan J. Yegelwel, Jacksonville, for appellants.
Barbara LoCastro Parker, of Williams, Shad, and Parker, Jacksonville, for appellees.
BARFIELD, Judge.
The Normans appeal from a final judgment which reduced their award of medical malpractice damages by 50% based upon the jury's finding that William Norman's own negligence contributed to his injuries. Appellant asserts the trial court erred in denying his motion for a directed verdict on the issue of comparative negligence. We agree and strike that portion of the judgment reducing the damages.
Appellant injured his left big toe when his foot became caught in the hydraulic mechanism of a forklift. He went to the Mandarin Emergency Care Clinic, where x-rays revealed a nondisplaced simple fracture of the second bone in his toe. Dr. House, the physician on duty, applied a metal splint over the end of the toe, and then a cast from toes to shin. He prescribed two pain killers and instructed Norman to elevate his foot and rest.
The accident occurred on Wednesday morning. Norman's foot swelled within the cast, causing the pain to increase. When Norman called Dr. House on Friday morning, House merely repeated his earlier instructions to keep the foot elevated and prescribed more pain medication. The pain escalated throughout the weekend. On Monday morning, Norman saw Dr. Gunther, an orthopedist, who removed the cast to reveal a discolored, swollen foot with several fluid-filled blisters. In spite of Dr. Gunther's subsequent care, gangrene necessitated amputation of the toe.
Norman sued Dr. House, the Clinic, and their insurer for medical malpractice. The defendants responded with allegations that Norman failed to follow the instructions given him by Dr. House and was therefore contributorily negligent. At trial, Norman testified that he followed his doctors' instructions and kept the foot elevated. His wife and a family friend corroborated this testimony. Expert witnesses testified for both sides. The trial court denied Norman's motion for directed verdict on the issue of liability and comparative negligence. After being given general negligence instructions, which did not include an instruction on concurring and intervening causes, nor on apportionment of damages, the jury returned an interrogatory verdict in which it found that Norman and his wife sustained damages of $100,000, and that 50% of the damages were chargeable to Norman's negligence. Norman's motion for a judgment in accordance with the motion for directed verdict on the issue of comparative negligence was denied. The trial court entered a final judgment awarding Norman and his wife a total of $50,000 damages, as well as costs and attorney's fees.
Appellants assert that the trial judge erred in failing to direct a verdict in their favor on the issue of comparative negligence because the record does not contain evidence that any of Norman's actions, after the initial injury, breached his duty of reasonable care and contributed to the need for the amputation of his toe. They point out that plaintiff's expert, Dr. Baker, concluded the toe died as a direct result of the negligent placement of the cast and not from the initial injury, and that the doctors who testified for the defendants both concluded that the amputation was solely the result of the damage caused by the original injury. Appellants argue that the jury, by returning a verdict finding that medical malpractice caused the amputation, clearly rejected the defendant's doctors' testimony and accepted the testimony of Dr. Baker. They urge that the only conceivable basis for a comparative negligence finding was the jury's concern over whether Norman was wearing a steel-tipped shoe at the time *78 of the accident,[1] about which no evidence was presented, and that Norman's actions at the time his toe was injured are irrelevant to the question of medical malpractice.
Appellees agree that the conduct of a plaintiff which occurs prior to the creation of the doctor-patient relationship cannot constitute comparative negligence in a medical malpractice action. They assert, however, that the evidence presented in this case, considered in the light most favorable to the defendants, more than adequately demonstrated that plaintiff failed to take proper precautions for his own safety by walking on the cast against medical advice and by failing to seek prompt medical assistance when the degenerating nature of his condition became apparent to him. They argue that the jury's inquiry into whether plaintiff was wearing a steel-tipped shoe at the time of the accident may have been made not for the purpose of determining whether Norman was negligent in causing the original accident, but for the purpose of determining the nature and extent of the initial injury, so as to weigh the credibility and accuracy of the conflicting experts' testimony.
There are several possible explanations for the jury's verdict. Uninstructed as to concurring and intervening causes and aggravation of an existing condition, the members of the jury may have been attempting nonetheless to apportion the damages attributable to the malpractice and the damages attributable to the original injury. In other words, they may have accepted the testimony of the experts from both sides and concluded that the gangrene was due in part to the severity of the injury, and in part to improper casting. However, apportionment of damages is not based upon a finding of comparative negligence, and the verdict form did not provide the jury an opportunity to apportion the damages. No objection to the verdict form has been recorded, so that this issue has not been preserved for review on appeal.
Another possible explanation for the verdict is that the jury, uninstructed on concurrent and intervening causes, may have found that Norman was negligent in contributing to the accident itself. The parties agree that plaintiff's conduct prior to the establishment of the doctor-patient relationship should not be considered, but it is only speculation that the jury reached its verdict in this manner. Appellees have presented a viable explanation for the jury's question regarding steel-tipped shoes. If the record contained sufficient evidence of Norman's negligence, apart from any contribution to the accident itself, the question of his comparative negligence would properly have been reserved for the jury.
Appellees' assertion that Norman was negligent in failing to seek other medical advice until the Monday following his accident is without merit. The doctrine of avoidable consequences, which imposes a duty on the person injured to minimize his damages, does not apply where the injured party is not chargeable with notice that damages are likely to ensue. A party who is injured by the negligence of another owes himself a duty of ordinary care and diligence, including the duty to obtain needed medical attention and to use ordinary care in following his physician's advice. However, public policy dictates that a patient does not have an obligation or duty to determine whether an injury is being properly treated. Mack v. Garcia, 433 So.2d 17 (Fla. 4th DCA 1983), rev. den., 440 So.2d 352, appeal after remand, 453 So.2d 465.[2] Under the circumstances of this case, the jury could not have found that Norman's actions in this regard constituted comparative negligence.
*79 Every other basis for the jury's finding of comparative negligence having been eliminated, there remains the assertion that Norman contributed to the condition which eventually resulted in amputation of his toe by walking on his injured foot, contrary to medical instructions. The cases cited by appellees[3] as authority for their argument that Norman's post-treatment conduct constituted comparative negligence involved situations where ample credible evidence was presented from which the jury could have found that the plaintiff in each case was negligent. However, the type and quantity of evidence presented in this case does not present a jury question on the issue of Norman's comparative negligence. Norman's testimony, supported by the testimony of his wife and friend, that he followed the doctor's instructions by taking his medication on a regular basis, keeping his foot elevated, and never bearing weight on his cast, was uncontroverted. Although there was expert testimony that the blisters found on his foot could have been caused by walking on his casted foot, the doctors testified that the blisters were just as likely caused by pressure necrosis or by the original injury. Dr. Gunther, who removed the cast, testified that he did not know if Norman had been bearing weight on his cast, but that there was no worn spot on the cast to indicate that he had. In short, although Norman admitted that on the day of the accident he made his way to the pharmacy and home without crutches (because his wife's sister had a pair of crutches to lend him), there does not appear to be any evidence that he bore weight on the injured foot at any other time. No expert testified that these actions contributed to the condition which resulted in amputation of the toe. Mere speculation by the defendants, without supporting evidence, is insufficient to support the jury's finding of comparative negligence on this basis.
The trial court's denial of the motion to set aside the jury's finding of comparative negligence is REVERSED, the portion of the judgment finding comparative negligence is stricken, and appellants are to be awarded their total damages, in the amount of $95,000 to William J. Norman and $5,000 to Carol Norman. The award of attorney fees and costs is affirmed. The case is REMANDED to the trial court for entry of a judgment consistent with this opinion nunc pro tunc November 28, 1984.
JOANOS, J., concurs.
ERVIN, J., dissents, with written opinion.
ERVIN, Judge, dissenting.
I respectfully dissent. In determining the appropriateness of directing a verdict in favor of one party, it must be decided whether the evidence presented is legally insufficient to support a verdict for the party against whom the verdict is directed. Holstun v. Embry, 124 Fla. 554, 169 So. 400 (1936); Morgan v. Collier County Motors, Inc., 193 So.2d 35 (Fla. 2d DCA 1966). This simply means that if there is no evidence, or if the evidence is such that under no view could the jury lawfully find a verdict for one party, it must be directed in favor of the opposite party. C.B. Rogers Co. v. Meinhardt, 37 Fla. 480, 19 So. 878 (1896). Conversely, if there is any evidence on which a jury could lawfully find for the movant's adversary, the verdict should not be directed, even if a preponderance of the evidence appears to favor the movant. Gunn v. City of Jacksonville, 67 Fla. 40, 64 So. 435 (1914); Budgen v. Brady, 103 So.2d 672 (Fla. 1st DCA), cert. denied, 105 So.2d 793 (Fla. 1958). Finally, in judging one's entitlement to such motion, the court must view not only the evidence but all reasonable inferences therefrom in favor of the nonmoving party. *80 Thundereal Corporation v. Sterling, 368 So.2d 923 (Fla. 1st DCA), cert. denied, 378 So.2d 350 (Fla. 1979); Sterling v. Hawkesworth, 139 So.2d 740 (Fla. 3d DCA 1962).
The majority states that "the type and quantity of evidence presented in this case does not present a jury question on the issue of Norman's comparative negligence." Ante at 79 (e.s.). The opinion nevertheless relates that there was expert testimony revealing that blisters found on the sole of Norman's injured foot could have been caused by walking on the casted foot, yet it continues that there was also testimony that the blisters could just have likely been caused by pressure necrosis by the original injury. Given the test to be applied in judging whether to grant a directed verdict, I consider that there was some evidence, together with reasonable inferences therefrom, for the jury to decide that Norman contributed to the condition which eventually resulted in amputation of his toe by walking on the injured foot, contary to medical instructions. Indeed, there was evidence that Norman admitted that he had walked on the injured foot to the pharmacy and home without crutches on the day of the accident. Given all of these facts, in my judgment the jury was lawfully authorized to reject Norman's testimony that he did not bear weight on the casted foot in disregard of his physician's instructions.
We are not free to reweigh the evidence and set aside a jury verdict merely because the jury may have drawn different inferences or conclusions from our own, or because we feel that another result is more reasonable. The jury weighed the conflicting evidence and the inferences therefrom, and apparently rejected the plaintiff's evidence that his post-injury conduct did not contribute to injuries.
I consider that there was some evidence from which the jury could lawfully find that plaintiff's negligence contributed to the damages sustained. I would therefore affirm the judgment entered below.
NOTES
[1] Before reaching its verdict, the jury requested the court to answer the following question: "Your Honor, was the boot that Plaintiff was wearing at the time of the accident, steel-toed?" The court instructed the jury to rely upon its recollection of the evidence.
[2] See also Cooper v. National Motor Bearing Co., 136 Cal. App.2d 229, 288 P.2d 581 (1955); Los Alamos Medical Center v. Coe, 58 N.M. 686, 275 P.2d 175 (1954); Kelly v. Carroll, 36 Wash.2d 482, 219 P.2d 79 (1950); and King v. Solomon, 323 Mass. 326, 81 N.E.2d 838 (1948).
[3] Vandergrift v. Fort Pierce Memorial Hospital, Inc., 354 So.2d 398 (Fla. 4th DCA 1978), cert. den., 362 So.2d 1057; Musachia v. Rosman, 190 So.2d 47 (Fla. 3d DCA 1966); and General Hospital of Greater Miami, Inc. v. Gager, 160 So.2d 749 (Fla. 3d DCA 1964), cert. den., Gager v. General Hospital of Greater Miami, Inc., 168 So.2d 145.