DISTRICT COURT OF APPEAL OF FLORIDA
SECOND DISTRICT

_____

JEFF COLE; ASHLEY DAVIS; MARIO CALDAROLA; TONIKA BRUCE;
and CHRISTINA CARTAGENA,

Appellants,

v.

PLANTATION PALMS HOMEOWNERS ASSOCIATION, INC.,

Appellee.

No. 2D22-3068

_____

September 27, 2023

Appeal from the Circuit Court for Pasco County; Kemba Lewis, Judge.

George Harder of Harder Law, Lutz, for Appellants.

Scott A. Cole and Francesca M. Stein of Cole, Scott & Kissane, P.A., Miami, for Appellee.

LUCAS, Judge.

Jeff Cole, Ashley Davis, Mario Caldarola, Tonika Bruce, and Christina Cartagena (collectively, the Homeowners) appeal a final summary judgment entered in favor of Plantation Palms Homeowners Association, Inc. (the HOA). We reverse.

The Homeowners reside in the Plantation Palms deed-restricted community; as such, their properties are subject to a declaration of

covenants, conditions, and restrictions (CCRs).  Pursuant to the CCRs, the HOA is responsible for maintaining the common areas of the Plantation Palms community, including a certain stormwater drainage ditch.  The Homeowners' properties are all located alongside this drainage ditch.

In October 2012, the Southwest Florida Water Management District sent a violation notice to the HOA stating that the drainage ditch had "not been maintained and is causing erosion and sedimentation within the ditch."  The HOA hired a civil engineering firm which tested land approximately 500 feet east of the Homeowners' residences.  In 2015, that firm reported there were indeed loose soil conditions that had impacted the drainage ditch's bank and that the extent of damage was between "appreciable and severe."  The firm also advised the HOA that, in addition to the location it had evaluated, "there are many other residences along the drainage ditch with similar problems."  The HOA hired a separate firm to perform restorative work in and around the drainage ditch, work which included removal of portions of the Homeowners' properties.

After the Homeowners began noticing cracks in their foundations, walls, and ceilings, they filed a lawsuit in September 2018 for breach of contract, alleging that the HOA had failed to adequately maintain or properly repair the drainage ditch as required by the CCRs.  In the course of litigation, the Homeowners hired Dhirendra S. Saxena, an engineer, to inspect their properties and assess the extent of damage.

On September 24, 2021, Mr. Saxena issued his "Geo-forensic Exploration, Field Testing, and Engineering Evaluation Services Report"[1] (Saxena Report), a report that would eventually become a feature of the judgment on appeal. In pertinent part, his report stated that he "examine[d] the areas, assess[ed] the stratification and engineering properties of subsurface soils and . . . evaulat[ed] the soil structure interaction of foundations at [Mr. Cole's] residence . . . to address the likely presence of any deficiencies resulting in any significant movement of foundation support"; "[c]onducted a subsurface exploration program consisting of the advancement of two (2) standard penetration test (SPT) borings to approximate depth of 40 to 50 feet within the front and back of the existing residential structure"; "[u]sed hand augers . . . to avoid any utilities in the upper 4 feet [of soil and] [s]tandard penetration testing techniques were used below the depth of 4 feet"; "[m]easured the immediate groundwater levels at the boring locations"; "[r]eviewed and visually classified the recovered soil samples in the laboratory using the Unified Soil Classification System"; selected two test pit locations adjacent to an exterior load bearing wall and performed "a drive-sleeve density test" and "[a]dvanced hand auger borings" at each test pit location; and "[p]erformed Manual Cone Penetrometer Probes (MCPP) and Dynamic Cone Penetrometer Tests (DCPT) and measured/documented cone values."

The report further stated that the procedures used for the field sampling and testing "were in general accordance with industry standard of care and established geotechnical engineering practice." The Saxena

---

[1] We refer specifically to the report prepared for the Cole property throughout this opinion; however, Mr. Saxena prepared substantially identical reports for each of the Homeowners' properties.

3

Report included certain qualifications and caveats and concluded that it was "very likely" that Mr. Cole's house had construction defects. However, the report continued:

> [C]hanges in soil compaction or consistency from bank erosion of the canal (that borders the north property line of Cole property) in conjunction with unstable slope existing during undercutting of the bank cannot be ruled out. Therefore, due to the afore-mentioned unsatisfactory compaction of the soil, the foundation has most likely experienced differential movement which has resulted in ensuing cracks to the perimeter/exterior load bearing walls and likely damage to interior of the home as well.

> Mr. Saxena concluded:

> It is my opinion, within a reasonable professional probability, that damage to Cole property (residential structure-interior/exterior, and to backyard property line) is likely related to **residence construction, long term erosion of the earthen bank and/or loss of stabilizing soil into the creek, lack of maintenance and flood control of this regional drainage feature, inadequate analysis of the proposed gabion stabilized retaining wall, and questionable construction.**

The HOA moved for summary judgment, arguing that there was no admissible evidence that the erosion of the drainage ditch had any causal connection to any damage to the Homeowners' properties. With respect to the Saxena Report, the HOA contended that it was highly speculative and failed to adequately connect the alleged damage to the Homeowners' properties and the drainage ditch the HOA was responsible for maintaining.

The circuit court agreed with the HOA. In its order granting the HOA's motion for summary judgment, the court reasoned that

> [n]either Mr. Saxena's reports nor any other record evidence in this case is sufficient to establish the requisite causal

4

connection between Plaintiffs' claimed property damages and any erosion of the subject canal or any construction related to the restoration project undertaken to address that erosion. To the extent that Mr. Saxena opines or suggests such a causal relationship, his opinions are unsupported speculation and, thus, inadmissible as evidence to oppose the Association's Motion for Final Summary Judgment.

Citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the court deemed the Saxena Report was "pure opinion and unsupported speculation not derived from 'scientific method' and 'empirical testing.' " Since there was no admissible evidence to support the element of causation in the Homeowners' breach of contract claim,[2] the circuit court entered summary judgment against them.

The Homeowners have timely appealed that judgment. We review the court's summary judgment de novo. *Pio v. Simon Cap. GP*, 48 Fla. L.

---

[2] The parties have agreed that the violations of the CCRs alleged in this lawsuit can give rise to a breach of contract action. The elements of a breach of contract claim are (1) the existence of a contract; (2) a breach of the contract; and (3) causation of damages as a result of the breach. *See Synergy Contracting Grp., Inc. v. Fednat Ins. Co.*, 332 So. 3d 62, 65 (Fla. 2d DCA 2021); *JF & LN, LLC v. Royal Oldsmobile-GMC Trucks Co.*, 292 So. 3d 500, 508 (Fla. 2d DCA 2020); *Ford Motor Credit Co. v. Parks*, 338 So. 3d 1070, 1072 (Fla. 1st DCA 2022) (citing *A.R. Holland, Inc. v. Wendco Corp.*, 884 So. 2d 1006, 1008 (Fla. 1st DCA 2004)).

The materiality of a contractual term or condition's breach is not, properly speaking, an element of a breach of contract cause of action, but rather a consideration as to whether the nonbreaching party would be excused from further performance. *See Synergy Contracting*, 332 So. 3d at 65 n.2 (citing 23 Williston on Contracts § 63:3 (4th ed.)); *JF & LN*, 292 So. 3d at 509 ("When focusing on the breach of the contract, not every breach permits the nonbreaching party to cease performance."); *Hostway Servs., Inc. v. HWAY FTL Acquisition Corp.*, No. 09-61315-CIV, 2010 WL 3604671, at * 9 (S.D. Fla. Sept. 13, 2010) ("Because the materiality requirement appears to be the result of spontaneous generation, the Court is reluctant to require an aggrieved party to prove a 'material breach' to establish a breach of contract under Florida law.").

Weekly D1351, D1351 (Fla. 2d DCA July 7, 2023). "Under the new [2021 amendment] summary judgment standard, summary judgment is warranted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.' " *Id.* (quoting Fla. R. Civ. P. 1.510(a)).

The circuit court correctly summarized the federal standard for summary judgment that rule 1.510 now applies to Florida courts. In *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the Supreme Court held that the burden on the party moving for summary judgment "may be discharged by 'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." "Once the party moving for summary judgment satisfies this initial burden, the burden then shifts to the nonmoving party to come forward with evidence demonstrating that a genuine dispute of material fact exists." *Romero v. Midland Funding, LLC*, 358 So. 3d 806, 808 (Fla. 3d DCA 2023) (citing *Celotex*, 477 U.S. at 324).

In the case at bar, however, the Homeowners did proffer evidence of causation, including their personal observations, the timing of the damage to their homes and, most pertinent, the Saxena Report. That engineering report concluded that one of the causes of the damage to the Homeowners' properties was "very likely" a lack of care and maintenance to the drainage ditch that the HOA was responsible for. Of course, the report did not claim that that lack of maintenance was the *sole* cause of the property damage; but it didn't have to. *See Ariz. Chem. Co. v. Mohawk Indus., Inc.*, 193 So. 3d 95, 103 (Fla. 1st DCA 2016) ("The plaintiff need not show that the defendant's action was the sole cause of the damages sought . . . ."); *Cedar Hills Props. Corp. v. E. Fed. Corp.*, 575 So. 2d 673, 678 (Fla. 1st DCA 1991) ("In all cases involving problems of

6

causation and responsibility for harm, a good many factors have united in producing the result; the plaintiff's total injury may have been the result of many factors in addition to the defendant's tort or breach of contract. . . . In order to establish liability the plaintiff must show that the defendant's breach was a 'substantial factor' in causing the injury." (quoting 5 Corbin on Contracts § 999 (1964))).

The court's error appears to have proceeded from its decision to sua sponte strike the Saxena Report under the auspice of *Daubert*, 509 U.S. at 592-93 (stating that the trial court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue" and explaining that "[m]any factors will bear on the inquiry, and we do not presume to set out a definitive checklist or test[,] [b]ut some general observations are appropriate"). *See also* § 90.702, Fla. Stat. (2022) ("If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case."). But no one ever claimed, much less identified, how Mr. Saxena's methodology was anything other than what he stated in his report—that is, "in general accordance with industry standard of care and established geotechnical engineering practice." The HOA never argued that *Daubert*

precluded consideration of the report.[3]  The HOA never identified (or proffered any evidence or testimony about) what factual data the Saxena Report failed to consider, what geotechnical or engineering principle or method it violated, or how the principles and methods it applied were unreliable.  *See Daubert,* 509 U.S. at 593; *Kemp v. State,* 280 So. 3d 81, 88-89 (Fla. 4th DCA 2019); *Giaimo v. Fla. Autosport, Inc.,* 154 So. 3d 385, 387-88 (Fla. 1st DCA 2014).  And the circuit court did not provide any findings or meaningful analysis to explain its determination that the report should be stricken.  *See Cristin v. Everglades Corr. Inst.,* 310 So. 3d 951, 957 (Fla. 1st DCA 2020) (holding that once a *Daubert* objection was raised, the factfinder "had the responsibility to perform the necessary analysis, make relevant supporting findings of fact, and issue a ruling").

The court's conclusion that the Saxena Report was based on speculation was, itself, the product of speculation.  From our de novo review, it was improper to grant summary judgment in favor of the HOA.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986) ("Credibility determinations . . . are jury functions, not those of a judge . . . [when]

---

[3] The HOA simply argued, in generic and unspecified terms, that the Saxena Report was "speculative and conclusory."  We recognize that "[t]he burden of proof to establish the admissibility of the expert's testimony is on the proponent of the testimony," *Booker v. Sumter Cnty. Sheriff's Off./N. Am. Risk Servs.,* 166 So. 3d 189, 193 n.1 (citing *Daubert,* 509 U.S. at 592 n.10), but only where the testimony is properly challenged, *see Royal Caribbean Cruises, Ltd. v. Spearman,* 320 So. 3d 276, 289 (Fla. 3d DCA 2021); *Sanchez v. Cinque,* 238 So. 3d 817, 823 (Fla. 4th DCA 2018); *Baan v. Columbia County,* 180 So. 3d 1127, 1131-32 (Fla. 1st DCA 2015).  But the HOA did not raise a proper *Daubert* challenge, and the trial court did not conduct a proper *Daubert* analysis.  In reaching this conclusion, we do not determine—nor could we determine on this record—whether Mr. Saxena's opinions are admissible under *Daubert.*

8

ruling on a motion for summary judgment . . . ."); *Ilias v. USAA Gen. Indem. Co.*, 61 F.4th 1338, 1350 (11th Cir. 2023) ("[M]atters of credibility are for a jury to settle at trial, not a trial court on summary judgment."); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 135 (2000) ("[T]he court must review all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party, but making no credibility determinations or weighing any evidence." (citations omitted)). Therefore, we reverse the circuit court's summary judgment and remand for further proceedings consistent with this opinion.

Reversed and remanded.

KELLY and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.