# Third District Court of Appeal

## State of Florida

Opinion filed December 13, 2023.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D22-1055
Lower Tribunal No. 17-17351
_____

**Bertha Fertil,**
Appellant,

vs.

**University of Miami, etc., et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Alan Fine, Judge.

Beck & Lee, P.A., and Jared H. Beck and Elizabeth Lee Beck, for appellant.

Wicker Smith O'Hara McCoy & Ford, P.A., and Jessica L. Gross, Leslie A. McCormick and Jackson F. McCoy, for appellees.

Before SCALES, HENDON and MILLER, JJ.

SCALES, J.

In this medical malpractice action, appellant Bertha Fertil, the plaintiff below, appeals a May 31, 2022 final summary judgment entered in favor of the defendants below, appellees the University of Miami, Xue Zhong Liu, M.D. and Rebecca Rodriguez, L.P.N. The trial court's summary judgment is premised on three bases: (i) the expert opinion proffered by Fertil's standard of care expert lacked both the requisite foundation and reliability under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); (ii) the expert opinion proffered by Fertil's causation expert lacked both the requisite foundation and reliability under Daubert; and, relatedly, (iii) the summary judgment record did not establish that the alleged malpractice was the proximate cause of Fertil's stroke. At oral argument, Fertil's counsel conceded that, for Fertil to prevail on appeal, we must reverse on all three bases. Because we conclude that the trial court did not abuse its discretion by striking, under Daubert, Fertil's causation expert, we affirm the May 31, 2022 final summary judgment without reaching the other two bases challenged in this appeal.

## I.  Relevant Facts and Procedural Background

On August 5, 2015, while visiting Florida on vacation, Fertil, complaining of a severe earache, went to an ENT clinic operated by the

2

University of Miami. Prior to seeing Dr. Liu,[1] Nurse Rodriguez took Fertil's blood pressure. Fertil's blood pressure reading was 233/150, which the parties agree constitutes severe hypertension.

Dr. Liu asserts that he instructed Fertil to go to the emergency room for evaluation and treatment, while Fertil claims that no such instruction was given. The medical record reflects the following notation by Nurse Rodriguez: "Patient BP is elevated she stated it always comes up high. She has consulted with her Primary doctor." The medical record is otherwise silent as to what occurred beyond that with respect to Fertil's severe hypertension. The medical record does reflect, though, that Dr. Liu removed excess earwax from Fertil's ear and discharged her. Nine days later, on August 14, 2015, Fertil suffered a debilitating hemorrhagic stroke that was precipitated by an aneurysm due to the severe hypertension.

In July 2017, Fertil filed this medical malpractice action against appellees alleging, in her operative complaint, that appellees caused Fertil's stroke by failing to provide expeditious treatment of her severe hypertension, and by failing to inform Fertil of the dangers of high blood pressure coupled with ear pain. During the discovery process, Fertil's action transformed from a failure to treat case to a failure to refer case. That is, Fertil claimed that

---

[1] Dr. Liu is an otolaryngologist, commonly referred to as an ENT doctor.

3

appellees, upon being faced with Fertil's high blood pressure reading and her complaints of ear pain, should have referred Fertil to the emergency room for immediate care and that appellees' failure to refer Fertil caused her eventual stroke.

Fertil's causation expert, Dr. Richard Lechtenberg, a neurologist, testified in his deposition that (i) had appellees referred Fertil to the emergency room when Fertil presented at the ENT clinic on August 5, complaining of ear pain, the emergency room personnel would have treated Fertil with anti-hypertensive medication the same day, and (ii) the medication would have prevented the aneurysm causing Fertil's August 14th stroke. Dr. Lechtenberg, though, admitted that did not take into consideration Fertil's extensive history of chronic hypertension – including instances of severe hypertension – or her prior treatment for hypertension. Indeed, Dr. Lechtenberg does not recall even asking Fertil about her past medical history when he interviewed Fertil.[2] Nor did Dr. Lechtenberg ever review Fertil's medical records evidencing Fertil's history of, and treatment for, chronic

---

[2] In his written report, under the heading "Past Medical History," Dr. Lechtenberg stated that Fertil "had no prior history of stroke or other significant illness." But at his deposition, Dr. Lechtenberg acknowledged that chronic hypertension is a significant illness.

4

hypertension. Dr. Lechtenberg testified that Fertil's extensive medical history was irrelevant to his causation opinion.

The trial court granted appellees' motion to strike Dr. Lechtenberg's expert testimony, concluding that Dr. Lechtenberg's causation opinion lacked the requisite foundation and was unreliable under Daubert. As noted, the trial court's striking of Fertil's causation expert provided one of three grounds underpinning the trial court's final summary judgment that Fertil timely appealed.

## II.    Analysis

### A. *Daubert and our Standard of Review*

In 2013, the Florida Legislature codified Daubert in section 90.702 of Florida's Evidence Code. For an expert witness's testimony to be admissible, the testimony must: (i) be "based upon sufficient facts or data"; (ii) be "the product of reliable principles and methods"; and (iii) apply those "principles and methods reliably to the facts of the case." § 90.702, Fla. Stat. (2022). Appellate courts review a trial court's expert witness determinations under the highly deferential abuse of discretion standard. See Booker v. Sumter Cnty. Sheriff's Office/N. Am. Risk Servs., 166 So. 3d 189, 192 (Fla. 1st DCA 2015). Hence, we will reverse a trial court's striking of an expert witness only if we can find that no other reasonable judge would have taken the view

5

adopted by the trial court. See May v. State, 326 So. 3d 188, 193 (Fla. 1st DCA 2021).

### B. *Fertil's Medical History*

At his deposition, Dr. Lechtenberg opined that Fertil's stroke would not have occurred if, on August 5, 2015, Fertil – who, unbeknownst to Dr. Lechtenberg, had a long history of treatment for hypertension, including instances of severe hypertension – had been prescribed, and had taken, anti-hypertensive medication. In its detailed May 31, 2022 order striking Dr. Lechtenberg's causation testimony, the trial court concluded, under the facts of this case, that such a causation opinion was necessarily dependent on at least a cursory review of Fertil's medical history of chronic hypertension.

Fertil argues that her medical history of chronic hypertension is "entirely irrelevant" to whether appellees' alleged breach of an applicable standard of care proximately caused her stroke and, therefore, a trial court *always* abuses its discretion when it strikes an expert witness in a medical malpractice case for the expert's failure to consider the plaintiff's medical history. We are reluctant to announce such a rule, particularly under the facts of this case.

In fact in this case, two assumptions are critical, indeed essential, to Dr. Lechtenberg's causation opinion: (i) Fertil would have gone to the

6

emergency room if Dr. Liu had referred her there; and (ii) Fertil would have taken any hypertension medication prescribed by the emergency room staff. The inaccuracy of either assumption would have undercut Dr. Lechtenberg's causation opinion. Hence, under Daubert's dictates – that opinions be based on sufficient facts and that principles and methods be reliably applied to the facts of the case[3] – it was certainly within the trial court's discretion to question the reliability of these essential assumptions given the long medical history of Fertil's both treated and non-treated hypertension that Dr. Lechtenberg neglected to consider.[4] See Sanchez v. Cinque, 238 So. 3d 817, 823 (Fla. 4th DCA 2018) (finding unreliable a doctor's causation testimony where the doctor based his causation opinion on assumptions of the plaintiff's pre-incident appearance without viewing photographs that would have shed light on the assumptions); Morrow v. Brenntag Mid-S., Inc., 505 F. Supp. 3d 1287, 1291 (M.D. Fla. 2020) (finding unreliable a doctor's testimony on medical causation where the doctor failed to review the patient's prior treatment records, noting that "[r]elevant expert testimony is admissible only if an expert knows of facts which enable him to express a

---

[3] See § 90.702, Fla. Stat. (2022).

[4] Fertil's medical history was readily available from Fertil's medical records, the depositions of Fertil's primary care physician who had treated Fertil for hypertension, and Fertil herself.

reasonably accurate conclusion" (quoting <u>United States v. City of Miami, Fla.</u>, 115 F. 3d 870, 873 (11th Cir. 1997))).

    C. <u>*Hypertensive Emergency*</u>

Also, as an essential part of his causation opinion, Dr. Lechtenberg testified that Fertil's severe hypertension on August 5, 2015, constituted a "hypertensive emergency." Dr. Lechtenberg testified that a hypertensive emergency occurs when a patient has a blood pressure reading at or above 180/120 and there is evidence of organ dysfunction. Common outward symptoms that are indicative of organ dysfunction include where the patient is experiencing severe chest pain, severe headache, nausea, vomiting, or shortness of breath. Dr. Lechtenberg acknowledged, though, that Fertil complained only of an earache when she presented at the ENT clinic, which he conceded is not an attendant symptom associated with a hypertensive emergency. Nevertheless, Dr. Lechtenberg claimed he had "no doubt" that if Dr. Liu had referred Fertil to the emergency room and she had been examined there, the emergency room staff would have found "evidence of end-organ damage given the level of hypertension she was experiencing."

But as Dr. Lechtenberg acknowledged, Fertil did not exhibit or complain of any attendant symptom associated with a hypertensive emergency while she was at the ENT clinic on August 5, 2015. This

8

undercuts Dr. Lechtenberg's critical assumption that, had Dr. Liu referred Fertil to the emergency room, emergency room personnel would "no doubt" have found "evidence of end-organ damage given the level of hypertension she was experiencing" that, left untreated, caused her eventual stroke.

Given that Dr. Lechtenberg's causation opinion – i.e., that Fertil's untreated hypertensive emergency caused Fertil to have an aneurysm triggering her August 14th stroke – is premised on Fertil having experienced a hypertensive emergency at the ENT clinic on August 5, we cannot say the trial court abused its discretion in finding, under Daubert, that Dr. Lechtenberg's opinion was unreliable when it was conceded that Fertil did not exhibit or complain of any symptoms that would meet the medical definition of a hypertensive emergency. See Sanchez, 238 So. 3d at 823 ("[A]n expert's opinion should not . . . be based on assumptions not rooted in any facts actually contained in the medical records relied upon."); Perez v. Bell S. Telecomms., Inc., 138 So. 3d 492, 499 (Fla. 3d DCA 2014) ("Subjective belief and unsupported speculation are henceforth inadmissible [under Daubert].").

Finding no abuse of discretion in the trial court's striking of Fertil's causation expert, we affirm the May 31, 2022 final summary judgment.

Affirmed.