# Third District Court of Appeal

## State of Florida

Opinion filed January 14, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D24-0288 & 3D24-0761
Lower Tribunal No. 21-23442-CA-01

_____

**Walgreens Co.,**
Appellant,

vs.

**Maria Victoria Chaux,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, William Thomas, Judge.

GrayRobinson, P.A., and Jack R. Reiter and Sydney Feldman D'Angelo, for appellant.

The Sanchez Law Group and Gabriel Sanchez; Keith Chasin P.A., and Keith Chasin; Burlington & Rockenbach, P.A., and Bard D. Rockenbach and Nichole J. Segal (West Palm Beach), for appellee.

Before LOGUE, GORDO and LOBREE, JJ.

LOBREE, J.

Walgreens Co. ("Walgreens") appeals a final judgment resulting from

a jury verdict in favor of Maria Victoria Chaux ("Chaux") and the denial of its motion for a new trial in this slip-and-fall case. Walgreens also appeals a final judgment of attorney's fees and costs.[1] Raising multiple grounds of trial court error, Walgreens claims it is entitled to a new trial. We agree with Walgreens on two of its points, and reverse and remand for a new trial.[2] We also reverse the final judgment of attorney's fees and costs.

## BACKGROUND

While in the checkout lane of her neighborhood Walgreens, Chaux fell to the floor. A Walgreen's employee who heard Chaux fall found her laying on her back and unconscious. The store manager, Jose Fundora, called 911, and Chaux was transported to the hospital. As a result of the fall, Chaux suffered a brain injury and was in the hospital for over three months. Chaux subsequently sued Walgreens for negligence. After a five-day trial, the jury returned a verdict in Chaux's favor and awarded damages of $5,547,733. The trial court entered final judgment in accordance with the jury's verdict

---

[1] Walgreens separately appealed the final judgment of attorney's fees and costs in case no. 3D24-0761. We consolidated the two appeals for all appellate purposes under case no. 3D24-0288.

[2] "We need not address every argument raised by [Walgreens] on appeal in order to reverse for a new trial, and nothing in this opinion should be construed as a determination on the merits of the unreached issues." Johns Hopkins All Child's Hosp., Inc. v. Kowalski, No. 2D2024-0382, 2025 WL 3019111, at *17 n.22 (Fla. 2d DCA Oct. 29, 2025)

and reserved jurisdiction to determine entitlement to attorney's fees, if any, and costs. Thereafter, Walgreens moved for a new trial, which the trial court denied. The following facts are pertinent to the specific issues addressed on appeal.

**I. Jury Instruction Regarding Spoliation of Evidence**

Five days after Chaux fell, her counsel sent a letter to Fundora requesting that Walgreens preserve any surveillance video in or around the premises and any surveillance video of the incident, including three hours before and after the incident. That same day, Chaux's counsel went to the Walgreens where the incident occurred and asked to see video from a security camera located above the cash register. Fundora told Chaux's counsel that to see the video, he needed to go through their claims administrator, Sedgwick Claims Management Services, Inc. ("Sedgwick"). Chaux's counsel then demanded that Sedgwick preserve and provide the surveillance video. Sedgwick replied that "the area of the incident within the store was not captured on video," and maintained that "[b]ased on facts known, Ms. Chaux experienced a seizure and therefore was not injured as a result of any liability on the store."

Chaux subsequently filed an amended complaint for negligence against Walgreens, alleging that she "slipped and fell injuring her head" on

3

Walgreens' premises because it "created a dangerous condition by allowing its floor to become inherently slippery and/or allowing a foreign substance to remain on the floor which caused the floor to be slippery." Chaux further alleged that Walgreens knew or should have known of the dangerous condition, failed to timely maintain the floor, and failed to warn of the dangerous condition. Chaux also alleged that she had timely demanded that Walgreens preserve and produce CCTV video footage from at least one hour before the fall and thirty minutes after, but Walgreens had not yet provided any CCTV footage. Chaux alleged that if Walgreens failed to preserve and produce the CCTV footage for this area, she would be "entitled to the imposition of a negative inference." Shortly after Chaux filed her amended complaint, in response to Chaux's counsel's inquiry, Walgreen's counsel stated that the incident was not captured on video and "there is no store video."

Prior to trial, Chaux moved for spoliation sanctions, arguing that "a negative presumption be given to the jury" for Walgreens' failure to preserve the CCTV video footage. The trial court held an evidentiary hearing on Chaux's motion. At the conclusion of hearing, the trial court stated that "I think some form of an adverse inference instruction is appropriate." Thereafter, the trial court entered its sanctions order, finding that Walgreens

4

had a duty to preserve the CCTV video and that its failure to do so hindered Chaux's ability to establish a prima facie case. The sanctions order stated that the trial "has not yet determined the appropriate [jury] instruction."

On the first day of trial, Chaux raised the issue of the jury instruction arguing that because the trial court found that Walgreens had a duty to preserve the video and its failure to do so hindered Chaux's ability to establish her case, she was entitled to a "presumption of negligence instruction" under Florida Standard Jury Instruction 301.11(b). Walgreens countered that "an inference instruction," set forth in Florida Standard Jury Instruction 301.11(a), was appropriate. After reading 301.11(a), the trial court stated that "in light of where we are in this case, I think that is the more appropriate instruction." The trial court added that it was "more than comfortable saying that there is an adverse inference that is created, that had that video been available, it would have been adverse to the position being taken by Walgreens," but "*I am not telling the jurors that you - - I'm not giving a presumption that you've proven your case.*"

At the charge conference, Walgreens objected to the trial court's proposed jury instruction[3] and requested standard jury instruction 301.11(a).

---

[3] The prior day, after the parties rested, the trial court proposed the following jury instruction on spoliation:

The trial court stated that because of Walgreens' objection, it had no choice but to give the instruction requested by Chaux. Walgreens objected, arguing that "throughout the course of this case it was always going to be the plaintiff's burden." Ultimately, the trial court instructed the jury as follows:

> The Court has determined that Walgreens had a duty to maintain the security video evidence. The Court has further determined, and you must accept as true, that Walgreens failed to maintain the security video evidence in that the security video evidence was lost, destroyed, concealed or otherwise made unavailable to the plaintiff.
>
> Because Walgreens failed to maintain the security video evidence, there is a presumption that the video evidence would have been unfavorable to the defendant Walgreens, *you should find that Maria Chaux established an element of her claim, notice of constructive - - notice or constructive notice of a foreign substance unless Walgreens proves otherwise by the greater weight of the evidence*.

(emphasis added).

## II. Trial Court's Exclusion of Walgreen's Experts Under <u>Daubert</u>[4]

---

> The Court has determined that Walgreens had a duty to maintain the security video evidence. The Court has further determined, and you must accept as true, that Walgreens failed to maintain the security video evidence in that the security video evidence was lost, destroyed, concealed or otherwise made unavailable to the plaintiff. Because Walgreens failed to maintain the security video evidence, *there is a presumption* that the video evidence would have been unfavorable to the defendant, Walgreens.

(emphasis added).

[4] <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S. 597 (1993).

Walgreens disclosed neurologist Dr. Brad Herskowitz as an expert. Shortly before trial, Dr. Herskowitz conducted a compulsory medical examination ("CME") of Chaux. Walgreens also disclosed internal medicine physician Dr. David Goldstein as an expert. Dr. Goldstein testified in his deposition about his opinion as to what caused Chaux to fall. In reaching his opinion, Dr. Goldstein relied on medical records, CME reports, a fire rescue report, and depositions. Based on his review of these materials, Dr. Goldstein ultimately concluded that Chaux "was having likely [an alcohol] withdrawal seizure. The withdrawal seizure would cause her to lose consciousness and fall backwards."

Chaux moved in limine to preclude as irrelevant and highly prejudicial any evidence about Chaux's past alcohol use, including Dr. Goldstein's testimony that Chaux was suffering from an alcohol withdrawal seizure at the time of her fall. On the morning of the first day of trial, the trial court asked Walgreens what evidence its expert relied on to opine that Chaux had a seizure from alcohol withdrawal. Walgreens explained that its expert based his opinion on Chaux's medical records, which showed Chaux had an alcohol problem in the past, coupled with blood test results. The trial court then stated "[t]hat to me is pure speculation. . . . [T]here's no way I'm allowing that testimony to come in." Ultimately, the trial court stated that the issue of

7

alcohol as an explanation for Chaux's fall was not "supportive under Daubert.

. . . [I]t's not an opinion that is based upon any scientific principle."

### III. Attorney's Fee Award

After the trial court entered final judgment for Chaux, Chaux moved for attorney's fees and costs as a sanction against Walgreens for the spoliation of the CCTV video footage. After a hearing, the trial court entered an order granting Chaux's motion for entitlement to attorney's fees, finding that "[a]ny fees awarded will be limited to the amount of legal work performed to prove the sanction imposed by the Court, namely the rebuttable presumption for the loss, destruction or concealment of the security video evidence at the subject Walgreens store." The parties later agreed to an attorney's fee and expert fees amount. As a result, the trial court entered an agreed final judgment taxing attorney's fees and costs in the amount of $179,850.

### STANDARD OF REVIEW

"Our standard of review on denial of a motion for new trial is whether the trial court abused its discretion." Graham Cos. v. Amado, 305 So. 3d 572, 577 (Fla. 3d DCA 2020). "The showing necessary to overturn the denial of a motion for new trial is not as great as that necessary to overturn an order granting such a motion." Manhardt v. Tamton, 832 So. 2d 129, 131 (Fla. 2d DCA 2002). In conducting its review, "an appellate court should consider the

8

totality of all errors and improprieties." <u>Edwards v. Rosen</u>, 189 So. 3d 177, 182–83 (Fla. 2d DCA 2016).

**ANALYSIS**

On appeal, Walgreens contends that the trial court's jury instruction about the video evidence constituted a burden shifting sanction imposed without proper notice. We agree. Chaux asked the trial court to instruct the jury with Florida Standard Jury Instruction 301.11(b). Instruction 301.11(b) is the standard "burden shifting presumption" instruction, and reads as follows:

> b.     *Burden shifting presumption.*
>
> The court has determined that (name of party) had a duty to [maintain (describe missing evidence)] [keep a record of (describe subject matter as to which party had record keeping duty)]. (Name of party) did not [maintain (describe missing evidence)] [or] [keep a record of (describe subject matter as to which party had recordkeeping duty)].
>
> Because (name of party) did not [maintain (describe missing evidence)] [or] [keep a record of (describe subject matter as to which party had a record keeping duty)], **you should find that** (name of invoking party) **established [his] [her]** (describe applicable claim or defense) **unless** (name of party) **proves otherwise by the greater weight of the evidence**.

(emphasis added). In contrast, Walgreens argued that if the trial court gave any jury instruction on the failure to preserve evidence, it should be Florida Standard Jury Instruction 301.11(a), the standard "adverse inference" instruction, which reads as follows:

9

*a. Adverse inference.*

If you find that:

(Name of party) [lost] [destroyed] [mutilated] [altered] [concealed] or otherwise caused the (describe evidence) to be unavailable, while it was within [his] [her] [its] possession, custody, or control; and the (describe evidence) would have been material in deciding the disputed issues in this case; **then you may, but are not required to, infer that this evidence would have been unfavorable to** (name of party). You may consider this, together with the other evidence, in determining the issues of the case.

(emphasis added).

The trial court gave neither standard instruction. Instead, after Walgreens rested, the trial court crafted an instruction that instructed both that "Because Walgreens failed to maintain the security video evidence, there is a presumption that the video evidence would have been unfavorable to Defendant, Walgreens," and that "You should find that Maria Chaux established an element of her claim, notice or constructive notice of a foreign substance, unless Walgreens proves otherwise by the greater weight of the evidence." Hence, not only was the jury instructed that the missing evidence was presumptively unfavorable for Walgreens, but also that a rebuttable presumption as to the burden of proof was in place, i.e., unless Walgreens had proved otherwise by the greater weight of the evidence, Chaux established that it had actual or constructive notice of a foreign substance on its floor.

The trial court's imposition of a burden-shifting sanction, after

10

Walgreens rested its case, was in contradiction to its earlier pronouncements that it would instruct *only as to an inference or presumption that the missing evidence was unfavorable to Walgreens*. At the conclusion of the pre-trial evidentiary hearing on Chaux's sanction motion, the trial court ruled that "some form of an adverse inference instruction is appropriate," but limited its discussion to a "rebuttable presumption that there was something on that tape." Later, on the morning of the first day of trial, when Chaux requested the 301.11(b) instruction, the trial court announced that it was comfortable giving an instruction that "you can presume that the lost video was unfavorable to the defendants" or that "there is an adverse inference created" as to the absent video. But the trial court repeatedly stated that it was "not going to do this by giving a rebuttable presumption and saying that [Chaux's] proven [her] case and they have to rebut it."

Here, the trial court's imposition of a burden-shifting sanction after Walgreens rested its case and contrary to its pre-trial announcement, resulted in Walgreens having defended against Chaux's claim that it was negligent in causing her to slip and fall without notice that the burden was on it to prove by the greater weight of the evidence that it had no actual or constructive notice of a foreign substance on the checkout lane floor. Because Walgreens had no notice that a burden-shifting sanction was in

11

place, it was deprived of the opportunity to meet that burden of proof. Not only was the belated imposition of the sanction a violation of due process, see Schmitz v. Schmitz, 401 So. 3d 416, 423–24 (Fla. 3d DCA 2024) (holding that trial court improperly applied burden-shifting sanction to crossclaims without proper notice where sanction imposed after trial in amended findings of fact and conclusions of law), but the instruction amounted to a directed verdict on an element on Chaux's claim, such that Walgreens was deprived of a fair trial, see, e.g., Routenberg v. State, 301 So. 3d 325, 330 (Fla. 2d DCA 2020) (stating that trial court's erroneous instruction on the State's burden of proof prevented jury from finding that the State did not meet its burden to prove defendant's use of deadly force was not justified where justifiable use of deadly force was only defense at trial; "This instruction amounted to a directed verdict on [defendant's] sole defense and thereby deprived him of a fair trial.").

Next, Walgreens argues that the trial court abused its discretion in concluding that Dr. Goldstein's[5] opinion that alcohol withdrawal was a

---

[5] Although Walgreens asserts that the trial court also abused its discretion in excluding Dr. Herskowitz's testimony regarding alcohol withdrawal as a possible cause of Chaux's fall, we find that Walgreens failed to preserve the issue for review. Near the conclusion of Dr. Herskowitz's trial testimony, Walgreens proffered Dr. Herskowitz's opinion testimony by filing his CME report. But the CME report contained in the record on appeal is blacked-out, preventing this court's review of the document. See Greenwald v. Eisinger,

12

possible cause for Chaux's fall did not satisfy Daubert.[6] "Florida courts follow

the Daubert standard when determining the admissibility of expert opinion

testimony, which is codified in section 90.702, Florida Statutes:

> If scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or in determining a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify about it in the form of an opinion or otherwise, if:
> (1)  The testimony is based upon sufficient facts or data;
> (2)  The testimony is the product of reliable principles and methods; and
> (3)  The witness has applied the principles and methods reliably to the facts of the case."

Lewis v. Norfolk S. Ry. Co., 420 So. 3d 1099, 1104 (Fla. 5th DCA 2025)

(quoting § 90.702, Fla. Stat.[7]).  "The United States Supreme Court explained

in Daubert that the trial court is tasked with being the 'gatekeeper' to 'ensur[e]

---

Brown, Lewis & Frankel, P.A., 118 So. 3d 867, 869 n.2 (Fla. 3d DCA 2013) ("The primary purpose of a proffer is to set forth, on the record, the evidence sought to be introduced, so the appellate court may assess the existence and extent of any error in the exclusion of the evidence.").  Additionally, Walgreens argument in its motion for a new trial that the trial court erred in excluding its expert's testimony under Daubert was directed only toward Dr. Goldstein.

[6] A trial court's decision to exclude expert testimony under Daubert is reviewed for an abuse of discretion. See Sunbelt Rentals, Inc. v. Burns, 402 So. 3d 1178, 1185 (Fla. 3d DCA 2025); Lewis v. Norfolk S. Ry. Co., 420 So. 3d 1099, 1104 (Fla. 5th DCA 2025).

[7] "Section 90.702, which was amended in 2013, is patterned after Rule 702 of the Federal Rules of Evidence as amended in 2000," and therefore federal cases interpreting the federal rule are persuasive.  Royal Caribbean Cruises, Ltd. v. Spearman, 320 So. 3d 276, 290 n.14 (Fla. 3d DCA 2021).

that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" Sunbelt Rentals, Inc., 402 So. 3d at 1185 (quoting Spearman, 320 So. 3d at 290). This means that "'[a] trial judge must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."'" Id. "To this end, the gaze of the court is fixed upon the methodology of the expert witness, not simply the substance of his opinion. And the expert's opinion must be based upon 'knowledge' and not simply 'subjective belief or unsupported speculation.'" Lewis, 420 So. 3d at 1105 (quoting Daubert, 509 U.S. at 590). "The proponent of the evidence must show only that 'the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.'" Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15 (1st Cir. 2011) (quoting Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 85 (1st Cir. 1998)).

"[T]his gatekeeping function is not meant to replace the adversary system." May v. State, 326 So. 3d 188, 192 (Fla. 1st DCA 2021). "Instead, the Daubert Court stressed that '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible

14

evidence.'" Vitiello v. State, 281 So. 3d 554, 560 (Fla. 5th DCA 2019) (quoting Daubert, 509 U.S. at 596).

Here, the trial court excluded Dr. Goldstein's opinion testimony on the ground that it was "not . . . based upon any scientific principle," but rather, "supposition and stacking of inferences." But Dr. Goldstein's proffered deposition testimony shows that in reaching his opinion, Dr. Goldstein relied on Chaux's medical records from the two hospitals she was brought to on the day of the incident, two CME reports, Chaux's historical medical records, the fire rescue report, and depositions. Dr. Goldstein testified that medical records show that when Chaux was brought to West Kendall Hospital immediately after the fall, an alcohol level was ordered and thiamine was administered to Chaux. The significance of administering thiamine is "[i]f there's any suspicion or possibility of alcohol-related seizure or alcohol withdrawal . . . there was consideration . . . that maybe this was related to alcohol." Dr. Goldstein opined that a variation in Chaux's liver levels between the day of the incident and that shown in prior medical records from three months before the fall, the fact that Chaux had no alcohol in her system on the day of the incident, together with Chaux's husband reporting to the physician at Baptist Hospital that Chaux had a history of alcoholism, were important to his opinion that an alcohol withdrawal seizure may have caused

15

the fall. He also testified that Chaux had suffered from flu symptoms for the two days before the fall, which is consistent with having a seizure. Ultimately, Dr. Goldstien opined that Chaux had a seizure before falling, which was "likely" a withdrawal seizure, but she also could have fainted due to low magnesium levels, low blood pressure issues, or the flu. In short, a review of Dr. Goldstein's proffered testimony shows that it was based on an extensive evaluation and comparison of Chaux's medical records from the day of the incident and prior.

Because Dr. Goldstein's opinion that Chaux's fall was likely the result of an alcohol withdrawal seizure was "the product of reliable principles and methods," § 90.702(2), Fla. Stat., and not, as characterized by the trial court, "supposition and stacking of inferences," we conclude that the trial court abused its discretion in excluding his expert testimony under Daubert. See Baan v. Columbia Cnty., 180 So. 3d 1127, 1133–34 (Fla. 1st DCA 2015) (reversing trial court's exclusion of doctor's testimony under Daubert as premised on speculation and manufactured facts and stating that record made clear doctor's testimony was reliable where doctor "reviewed the child's medical records, the autopsy report, EMS records, and statements from witnesses who observed [the child's] medical condition in the last hours and minutes of his life"); cf. Sanchez v. Cinque, 238 So. 3d 817, 823 (Fla.

16

4th DCA 2018) ("Although courts have recognized that a physical examination and review of medical records may qualify as an acceptable and reliable methodology, an expert's opinion should not, as here, be based on assumptions not rooted in any facts actually contained in the medical records relied upon." (citation omitted)); Morrow v. Brenntag Mid-S., Inc., 505 F. Supp. 3d 1287, 1291 (M.D. Fla. 2020) (finding doctor's testimony on medical causation unreliable where doctor failed to review patient's prior treatment records, noting that "[r]elevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion" (quoting United States v. City of Miami, Fla., 115 F. 3d 870, 873 (11th Cir. 1997)).

**CONCLUSION**

The trial court erred in imposing a burden-shifting spoliation sanction without proper notice. This sanction was imposed after both parties had rested, and contradicted the trial court's pre-trial announcement that it would instruct only as to an inference or presumption that the spoliated evidence was unfavorable to Walgreens. This error was compounded by the trial court's improper exclusion of Walgreens' expert, Dr. Goldstein, under Daubert. We conclude that together, these errors denied Walgreens a fair trial, and therefore the trial court abused its discretion in denying Walgreens'

17

motion for a new trial. Accordingly, this cause is reversed and remanded for a new trial. As we are reversing for a new trial, we also reverse the final judgment of attorney's fees and costs awarded to Chaux as a sanction.

Reversed and remanded for a new trial.